GEORGE W. COLLAMER *v.* ORISON FOSTER.

*Partnership.   Liability of Partners to each other.*

In general, it is well settled, that no action of assumpsit can be sustained by one partner against his co-partner, in respect to any matter connected with the part nership transactions.

But if the parties, by an express agreement, separate a distinct matter from the partnership dealing, and one party expressly agrees to pay the other, a specific sum for that matter, at a given time, the action of assumpsit will lie on that contract, though the matter arose from their partnership dealing.

So where the defendant agreed to pay the plaintiff a given sum per ton for a quan- tity of starch, and the costs of transportation to the place where the plaintiff was to deliver the same by the contract, the payment to be made by a given day, *it was held* to be an express contract, on which the plaintiff can sustain the action of assumpsit.

ASSUMPSIT for a quantity of starch, and freight of the same. Plea, the general issue, and trial by the court.

The plaintiff claimed to recover for 43,121 pounds of starch, at the price of $3,87½ per hundred, including freight from Barre, to Northfield.

The defendant admitted that the amount of starch was deliver- ed at Northfield, prior to the 20th day of February, 1849, and that he received and sold the same.

The plaintiff read in evidence the following contract, dated Jan- uary 19, 1849, and signed by himself and the defendant.

" 1. Geo. W. Collamer, on his part, to deliver the starch, say " about 20 to 25 tons, at Northfield, by the 20th of February " next.

" 2. Orison Foster, to take the starch and become a co-partner " with G. W. Collamer, by selling the starch, and paying a draft, " said Collamer gave W. & F. H. Whittemore & Co., which is " due about the 15th day of March next.

" 3. All the loss or gain on the starch is to be divided equally " between said Collamer and Foster, after Foster's paying Colla- " mer $3,75 per hundred, at Northfield, and $2,50 per ton for the " freight to Northfield, from Barre, which Foster is to do by the " 15th of March next.

" 4. Foster to sell the starch, and pay the draft aforesaid, for

Collamer *v.* Foster.

" about one thousand dollars, and the residue to make the above
" sum of $3,87½ to Collamer, and the loss and gain to be divided
" between them.

" The starch to be of good quality, and Foster comes in partner
" with Collamer, on these conditions, and Collamer agrees the
" starch to hold out weight."

The defendant claimed that the proceeds, of the sale, deducting the
necessary charges and expenses, were less than the amount claim-
ed by the plaintiff. Both plaintiff and defendant furnished speci-
fications of their claims.

The plaintiff admitted two items in defendant's specifications,
a store account and note to Orange County Bank.

The defendant claimed that on the evidence, the plaintiff could
not maintain this action; but the County Court,—POLAND, J., pre-
siding,—rendered judgment for plaintiff to recover for the amount
of said starch, and freight to Northfield, deducting said two items
in defendant's specification, and interest after March 15, 1849.

Exceptions by defendant.

*T. P. Redfield* and *P. Dillingham* for defendant.

The *starch* by the terms of the contract, is the *stock in trade.*

The plaintiff furnishes the stock, and the defendant agrees to
furnish labor, care, and diligence.

Plaintiff puts into the partnership the starch at three dollars
and eighty-seven and a half cents per hundred.

Defendant agrees to take it to market—" and comes in partner
with Collamer on these conditions,"—Collamer agrees that the
starch shall hold out weight; and the loss and gain is to be divi-
ded between them.

The writing, on its face, shows that the parties launched a part-
nership—it professes to be articles of partnership—" and Foster
comes in partner with Collamer on these conditions."

It was necessary to fix a value to the stock, furnished by plain-
tiff—a standard above which was *gain*, to be equally divided be-
tween the parties; below which was *loss* to be also equally di-
vided.

The defendant insists, that the plaintiff should bring some prop-
er action to close up and adjust all balances, due either party,
arising out of the relation imposed by that contract.

And that the proper action is *account.*

If this were strictly a mercantile matter—the plaintiff put into the partnership $1,000, and defendant assumed to carry on trade for one year, then pay to the plaintiff the capital, and divide the loss and gain—it is quite obvious, if there was less than $1,000, at the end of the year, such loss does rest equally upon the parties; and such relation can only be adjusted by the action of account.

It has been admitted by the plaintiff's counsel, that this action has no scope to determine or adjust the liabilities of the parties, under this contract, but that the plaintiff should recover in this suit, and then one of the parties should bring his action of account.

Yet it can hardly be denied, that one suit in proper form, would adjust all matters between the parties, growing out of this contract.

The action of account and assumpsit are not concurrent.

The defendant claims that the net sales of this starch, after deducting charges for freight, storage, and insurance, is considerably less than the plaintiff recovered below.

The plaintiff has insisted, that portions of the contract should be *rejected*—but it is the duty of the court to give force and meaning to every part of the contract. " *Ut magis valeat quam pereat.*"

Where plaintiff agreed with defendant to convey by horse and cart, the mail between W. and B. at £9 per mile, per annum, and to pay his proportion of the expenses of the cart, &c.; money received for the carriage of parcels to be divided between the parties, and the damage occasioned by the loss of parcels, &c., to be borne in equal portions; held, that this agreement constituted a partnership, *inter se.* *Green* v. *Busby,* 2 Bingham N. C. 108.

This is not a case where money was paid to launch a partnership as was the case in *Venning* v. *Lecker,* 13 East 7. *Williams* v. *Henshaw,* 11 Pick. 79. *Helmer* v. *Smith,* 20 C. L. R. 302. *Dab & Dab* v. *Hasley,* 16 Johnson 33. *Fremont* v. *Coupland,* 9 C. L. R. 366. *Cheap* v. *Cromond,* 6 Com. Law R. 557. *Reid et al.* v. *Hollinshead et al.,* 10 Com. Law R. 460.

Chancellor KENT fully indorses the opinion of Ch. J. SPENCER, in *Dab & Dab* v. *Hasley.* See 3 *Kent's Com.* 23.

*Peck & Colby* for plaintiff.

It is claimed by the defendant that the contract between the parties constituted a copartnership, and that the remedy should be sought in "account." But the agreement was that the defendant should pay $—— per ton for the starch on or before a certain day, and this promise is independent of any question of profit or loss. Such payment was a condition *precedent* to any right in defendant to become a partner. Such payment was defendant's capital—and for that the suit is brought. Assumpsit lies by one partner against another to recover a sum which must have been the *basis* of the account when the partnership. commenced. *Venning* v. *Lecker*, 13 East 7.

Lord ELLENBOROUGH says, " The purchase of goods was to launch the partnership, for which each, between themselves was to contribute his share." *Gale* v. *Lockie*, 2 Starkie 107. *Helmer* v. *Smith*, 2 Bing. 709. *Vanness* v. *Forrest*, 8 Cranch 30. *Duncan* v. *Lyon*, 3 J. Ch. 362. Collyer on Part. 269, 270. Gow on Part. 72, 73. *Williams* v. *Henshaw*, 11 Pick. 79.

The opinion of the court was delivered by

ISHAM, J. The plaintiff has brought this action of assumpsit to recover for a quantity of starch, which was received and sold by the defendant; and also, for money advanced by him for its transportation to Northfield. A recovery in the case is resisted on the ground that the property was received under a partnership contract and is involved in their partnership dealing and account ; and that the remedy of the party is not at law in this form of action ; but is confined to the action of account, or bill in equity, in which all the partnership dealing can be liquidated, the balance ascertained, and finally determined.

As a general rule, it is well settled, that no action of assumpsit can be sustained by one partner against his co-partner, in respect to any matter connected with the partnership transactions, or which would involve the consideration of their partnership dealing. Chitty on Cont. 236. The reason is, "that it is impossible under that form of action to settle the partnership accounts, and that it would be useless for one. partner to recover what, upon taking a general account, he might be liable to refund. Collyer on Part. § 264.

On the other hand, one partner may sustain an action at law, against his co-partner, " on an express contract, or covenant, to do,

Collamer *v.* Foster.

or omit to do, any particular act, not involving any question as to the general accounts. Thus, if one partner agrees to advance a specific sum of money as his proportion of the capital, an action at law will lie to recover that amount, even during the partnership. Such was the case of *Venning* v. *Lecker*, 13 East 7, and *Gale* v. *Lecker*, 2 Starkie 107. So if money is loaned by one partner to another, for the purpose of forming the partnership, the money loaned can be recovered in this form of action if an express contract is made for its repayment. Collyer on Part. 264, note 4. Gow on Part. 72, 73. 19 Wend. 424. In the case of *Williams* v. *Henshaw*, 11 Pick. 79, MORTON, J., observed, "that if the "plaintiffs had shown an agreement on the part of the defendants "to advance one half of the money necessary to carry on their "joint speculation, *or a promise to repay the plaintiffs for their ad-* "*vances*, they might well recover upon such undertaking in the "present action." We think this doctrine is sustained by the authorities, and that a just construction of the contract between these parties, will bring this case within its provisions.

The contract was made on the 19th of January, 1849, in which Mr. Collamer agreed to deliver to the defendant at Northfield, about 20 or 25 tons of starch by the 20th of February then next. By this provision it is obvious, that the starch was to be furnished or procured by Mr. Collamer, at his expense and on his sole responsibility. The defendant on the delivery of the starch at Northfield, agreed to take the same, dispose of it in market, and to pay the plaintiff for the starch, and the cost of its transportation to Northfield, amounting to $3,87½ per ton, by the 15th of March then next. The language of the parties, in their contract is in these words, " the loss or gain on the starch is to be equally divided between said Collamer and Foster, after Foster's paying Collamer $3,75 per hundred at Northfield, and $2,50 per ton for the freight from Barre, to Northfield, which Foster is to do by the 15th of March." In this language, there is an express promise to pay Mr. Collamer that amount by that time. We are led by this provision, to think, that the parties did not intend to treat the starch as partnership property. It was to be the property of Mr. Collamer, under an authority in Mr. Foster to dispose of it. In Bissett on Part. 60, 61, it is said, " that property which belongs to "one or more members of a firm, but not to all, or in other words,

" the ownership of which is not co-extensive with the partnership " is not partnership property." The property, estimated at a given value, was to stand as a claim to be paid by Mr. Foster, at a specified time ; the same as if so much money had been advanced to Mr. Foster, to launch the partnership, under an express agreement to repay the same on a given day. On this construction, the case falls within the rule and language of MORTON, J., in the case of *Williams* v. *Henshaw.* 11 Pick. 79. It was the use of that property during that period without interest, under an authority to sell it, with what should be realized on its sale, more than the amount which was to be paid to Mr. Collamer, which was to be applied against the personal services of the defendant, that was to be the subject of their joint interest and dealing. Under such circumstances, this action can be sustained.

But if the starch is to be considered as partnership property, the result, under this contract, will be the same. If there had been no express contract to pay for that property by the 15th of March, this action could not have been sustained ; for, under such circumstances, the law will imply a repayment only of the balance after the liquidation of the partnership dealings. But the rule seems now to be well settled, that if the parties by an express agreement, separate a distinct matter from the partnership dealing and one party expressly agress to pay the other, a specific sum for that matter, the action of assumpsit will lie on that contract, though the matter arose from their partnership dealing. Collyer on Part. § 272. Bissett on Part. 128. *Coffee* v. *Brian,* 3 Bing. 54. *Jackson* v. *Stopherd,* 2 Cromp. & Mees, 361.

In the case of *Gibson* v. *Moore,* 6 N. H. 547, it was held, that partners may separate any portion of the partnership effects from the rest, and that a promise to pay that sum is binding, and an action may be sustained for it, although it is not the final balance upon a settlement of the whole concerns of the partnership.

When it is stated in this contract, therefore, that the defendant will pay the plaintiff the sum of $3,87½ per ton, for the starch and cost of transportation, by the 15th of March, we can regard it in no other light, than as an express contract, on which this action can be sustained ; as well, as if the defendant had given the plaintiff a promissory note for that amount payable at the same time. *Vanness* v. *Forrest,* 8 Cranch. 30.

The judgment of the County Court is affirmed.