### GEORGE W. B. DAKIN *v.* JOSIAH G. GRAVES.

Under chapter 14, section 2, Revised Statutes, a notarial protest is evidence of a demand on the drawee of an order payable "in exchange on New York," upon a contingency.

The drawer of an order payable to D., "when D. retires the notes of D. & Co. for four thousand dollars," is not liable to D. in consequence of protest for non-payment by the drawee after D. had retired the notes, unless notice was given to the drawee that the notes had been retired.

The drawee's statement at the time of demand, "that he had no funds for that purpose," cannot be proved by the notary's recital in the protest.

The business of a co-partnership as to all matters appearing on the books, or which had come to the knowledge of the co-partners, was settled and closed at the time of dissolution, the assets were divided, and the liabilities provided for, and it was then agreed between the partners, that in case any liabilities should be discovered not embraced in the schedule of the liabilities then made, each partner should pay towards the same in proportion to the amount of capital which he had in the partnership, and in case any assets were discovered which were not embraced in the schedule of assets, they were to be divided *pro rata* among the members of the co-partnership. *Held*, that one partner might maintain an action at law against another partner to recover his proportion of money of the partnership in the latter's hands at the time of the settlement, which was not then accounted for, or mentioned by him, or entered on the books of the firm, no other assets of any kind belonging to said firm having been discovered.

But to entitle one of the partners to recover at law of another partner contribution for his proportion of the debts of the firm paid, since dissolution, by the former, it must appear that the latter was notified of such payment before suit.

No action can be maintained upon a contract to make up any loss which the promisee might sustain in consequence of taking Illinois bank currency from the promisor at par, unless the promisor was notified before suit of the amount of the loss.

THIS is an action of assumpsit on a draft or order, of which the following is a copy :

Clinton, Dec. 16, 1861.

JOHN WEARE, Sir : Please pay to Geo. W. B. Dakin two hundred and fifteen dollars 45–100 in exchange on New York, when Mr. Dakin retires the notes of Dakin & Co., for four thousand dollars, value received.· 　　　　　　　　　　　　　　　　　J. G. GRAVES.

Plea, the general issue with a set-off.

Said draft or order was never accepted by said Weare, but on the 13th of February, 1862, was protested. The protest stated that the notary presented "the original draft," "and demanded payment of the

same, which was refused, said Weare stating that he had no funds for that purpose ;" but it did not expressly appear that payment in exchange on New York was demanded, or that any notice was given to said Weare that the notes mentioned in said order had been retired according to the terms of the order, though there was evidence tending to show that they had been so retired prior to that time.

The protest was received subject to the defendant's general exception, and as tending to prove a demand upon Weare for exchange on New York. It appeared in evidence that the plaintiff, defendant, one H. J. Olcott, and one L. M. Flourney in 1861, were co-partners, carrying on the business of private bankers in Clinton, Iowa; that on the 25th day of November, 1861, the partnership was dissolved and the assets divided ; that a schedule of all the debts and liabilities was made and the division of the assets was made, according to the schedule thus made, each of said partners except said Graves, taking a certain specific portion, Dakin and Olcott assuming part of the liabilities, and said Graves assuming all the other liabilities and taking the residue of the assets. It was agreed between the partners at that time, that in case any liabilities should be discovered not embraced in the schedule of the liabilities then made, each partner should pay towards the same in proportion to the amount of capital which he had in the partnership. The partners also signed the following agreement :

"A division of the property and assets of the firm of Dakin & Co., having been executed in pursuance of the terms of the foregoing agreement and a release to said Dakin and Olcott from all claims for contribution, except as in said contract and release mentioned and described, having been also executed by said Graves and Flourney : Now in consideration of said division and release, it is hereby understood and agreed, that, in case any profits or property rightfully belonging to said firm of Dakin & Co., not mentioned or exhibited in the foregoing contract, or on the books of the company, nor divided between the co-partners above mentioned, shall be hereafter discovered, then, and in that case, the said several co-partners above mentioned shall share in the said profits and property, pro rata, according to the interest respectively held by them in said firm."

The business of the partnership as to all matters appearing on the books, or which had come to the knowledge of the co-partners, was settled and closed at that time.

The defendant offered to prove that at the time of the settlement there was money of the partnership in the plaintiff's hands which was not accounted for, or mentioned by him, or entered on the books of the firm ; and that no other assets of any kind belonging to said firm had been discovered, and the defendant claimed to set off such amounts in this suit ; but the court ruled that such evidence was not competent, to which the defendant excepted. The defendant also offered to prove that there were debts due from the partnership which were not included in the schedule, that he paid all of them, and he claimed to be allowed one seventh of the sums so paid on his set-off, the plaintiff having one seventh

interest in the co-partnership, but the court ruled that the evidence was not competent, to which ruling the defendant excepted.

The defendant offered evidence tending to prove that at the time of the dissolution of the co-partnership, the plaintiff turned over to him the sum of $1849, in Illinois bank currency; that he objected to taking the par or face value, and the plaintiff then agreed that if he would so take it, he, (the plaintiff,) would make up to the defendant any loss which the defendant might sustain in consequence of so taking it, and that there was a loss on the same of $475.64, and the defendant claimed that this sum should be allowed on his set off, but there being no evidence that the plaintiff had any notice of such loss or of the amount of it until the commencement of this suit, the court ruled that it could not be set off in this suit, to which ruling the defendant excepted. A verdict was thereupon taken by consent for the plaintiff for the amount of the order and interest from the date of protest.

*W. W. Bailey*, for plaintiff.

*Morrison & Stanley, Barrett & Atherton*, for defendant.

SMITH, J.  I.  Without considering the fact that the instrument in suit is payable "in exchange on New York," (see 1 Parsons on Notes & Bills, 45–7,) it is clear that it cannot be regarded as a bill of exchange, for the reason that it is payable on a contingency; 3 Kent's Com. 74.  But we think it is an "order" within the meaning of that term in section 3 of chapter 14, Revised Statutes, which enacts that "the protest of any bill of exchange, note, or order, duly certified by any notary public under his hand and official seal, shall be evidence of the facts stated in such protest, and of the notice given to the drawer or endorsers."  It is claimed by defendant that this statute "applies only to negotiable paper payable at a specific time and in money;" but it is difficult to see why the word "order" should have been used, unless the legislature had meant to include under it a class of instruments not comprised under the preceding term "bill of exchange," as that term would have been a sufficient description of all written orders or requests by one person to another, "for the payment of money, at a specified time, absolutely, and at all events;" 3 Kent's Com. 74.  The use of the word "note" would seem to strengthen the construction that the statute was intended to include something more than negotiable paper; see 3 Kent's Com. 77; *Odiorne* v. *Odiorne*, 5 N. H. 315; *Cong. Society in Troy* v. *Goddard*, 7 N. H. 430; *Parker, C. J.*, in *Wilson* v. *George*, 10 N. H. 445, p. 447, p. 452.

The statement that the notary presented "the original draft," "and demanded payment of the same," must be taken to mean that a demand was made for payment according to the tenor of the draft, that is, "in exchange on New York."  The ruling upon the reception of the protest was therefore correct.

II.  Did the holder take proper measures to obtain payment of the drawee at maturity?  In the case of a bill of exchange payable at a day

specially named, it would be sufficient for the holder to present the bill to the drawee and demand payment, but this order was payable upon a contingency which was of such a nature that the holder must of necessity be aware of its occurrence, while the drawee might well be ignorant of it. The event by which Dakin was to become entitled to payment consisted of an act to be performed by himself, not requiring the concurrence or knowledge of either Weare or Graves. In *Hicks* v. *Burns*, 38 N. H. 141, the general rule is laid down by *Perley, C. J.*, (p. 151,) that "where the act, or the state of facts upon which the liability of the defendant is to arise is uncertain in its character, and peculiarly within the knowledge of the plaintiff, so that the defendant cannot learn the facts by the exercise of reasonable diligence, he must have notice before suit;" see, also, *Fitts* v. *Hoitt*, 17 N. H. 530. Adopting this statement of the law, we think that the retiring of the notes was a fact so peculiarly within the knowledge of the holder that he had no right to demand payment of the drawee till he had notified him of his compliance with this condition precedent. As he did not give such notice, he has not made the proper presentment to the drawee for payment, and the drawer therefore is not liable in this action.

III. Plaintiff claims "that the statement of Weare to the notary at the time of demand, that he had no funds for that purpose, is properly proved by the protest, and being proved, any demand or notice to either Graves or Weare would thus be rendered unnecessary." It is true that the statute makes the protest "evidence of the facts stated in such protest," but this refers only to "acts within the scope of a notary's official duty," and the notarial certificate cannot be evidence of collateral facts. If payment is not made it is his duty to certify that fact, but he is not bound to state the reasons given for not paying, and, if he does, his certificate is not evidence of them; see *Dumont* v. *Pope*, 7 Blackford 367; *Maccoun* v. *Atchfalaya Bank*, 13 La. O. S. 342. Without inquiring, therefore, whether the declarations of the drawee, if proved, are evidence against the drawer to show want of funds, we hold that those declarations cannot be proved by the notarial certificate. But if it had been conceded that the drawee had no funds of the drawer at the time of presentment, it might well be questioned whether, to excuse the holder from making presentment to the drawee, it is not necessary to prove the additional fact that the drawer had no effects in the hands of the drawee from the time the order was drawn to the time of presentment; see *Richie* v. *McCoy*, 13 Smedes & Marshall 541.

IV. Under the circumstances of this case the fact that two of the items in the set-off are demands growing out of a co-partnership matter is not a bar to the recovery of these items in a suit at law. Partners may separate any portion of the partnership affairs from the rest, and adjust that portion, and an action may be maintained upon a promise to pay the sum found due upon such adjustment, notwithstanding other partnership concerns remain unsettled. *Gibson* v. *Moore*, 6 N. H. 547; see, also, *Lyon* v. *Malone*, 4 Porter's Ala. 497; *Collamer* v. *Foster*, 26 Vt. 754; *Caswell* v. *Cooper*, 18 Ill. 532. "There may be special bargains by which particular transactions are insulated and separated

from the winding up of the concern, and are taken out of the general law of partnership ;" *Bayley, B.,* in *Jackson* v. *Stopherd*, 2 Cr. & M. 361, p. 366. In the present instance the partners have each, in effect, waived their right to have all the partnership matters which might come to light after the dissolution adjusted in one single proceeding (in equity ;) and have agreed that as to such matters the members of the firm shall regard each other as individuals, and not as partners. And it does not appear that the outstanding items are so numerous or so complicated that it would be either impossible or difficult to adjust them in a suit at law. In fact, it would seem that if both items were recoverable in this suit the rendition of the judgment would be "an entire termination of the partnership transactions," and that there is no ground for the objection "that it would be useless for one partner to recover what upon taking a general account he might be liable to refund."

It is true that there was not, and from the nature of the case could not have been, any agreement to pay a specified sum or balance. But the agreement was as definite as the circumstances admitted of, and is just as effectual in changing these matters from partnership to individual transactions as if the amounts had been known and agreed on. The defendant can maintain an action "for a cause which he can show to have been cut out from the partnership by himself and his partners jointly, and to be as completely separated from it as if there had never been any connection between them." In *Rockwell* v. *Wilder*, 4 Met. 556, it was held that where it is ascertained by partners, who are about closing their partnership concerns, that a balance will be due to one of them on a final settlement, although the exact amount of such balance cannot be ascertained, yet if the debtor partner gives the creditor partner a promissory note for a sum not exceeding the amount of the balance which will be due on a final settlement, such note is given on a good and sufficient consideration, and payment thereof may be enforced by an action at law, though the balance is not struck between the partners. There seems to be no good reason why a promise to pay a specified proportion of any items which may hereafter be discovered cannot be the foundation of a suit at law. As there was in this case a special agreement, we need not inquire what the defendant's rights would have been in the absence of such an agreement; see *Fanning* v. *Chadwick*,, 3 Pick. 420 ; *Brown* v. *Agnew*, 6 Watts & Serg. 235.

Our conclusion is, that the defendant is entitled to set off his claim against the plaintiff for a share of the undistributed assets, and that he would have had a right to set off the claim for contribution if he had given notice to the plaintiff before suit of the payment of the firm debts ; but, as it does not appear that he gave any notice, and the payment was a fact peculiarly within his knowledge, he cannot recover contribution for the plaintiff's proportion of the debts paid.

V. For the same reason, want of notice to the plaintiff before suit, the defendant cannot set off the loss on the Illinois bank currency. If the plaintiff had agreed to make good the difference between the par value and the actual value at the time he turned over the currency to the defendant, it might be argued that the market value at that time was a

fact equally open to the observation and knowledge of both parties. But it would seem that the plaintiff was to "make up to the defendant any loss which the defendant might sustain," and that might depend on when the defendant parted with the currency, a fact not supposed to be within the plaintiff's knowledge.

*Verdict set aside.    New trial.*