Smith, Respondent, vs. Putnam and others, Appellants.

*April 11 — June 21, 1900.*

*Logs and timber: Partnership agreement: Suit at law: Recovery of*
*profits: Waiver: Parol contract for dealings in land: Statute of*
*frauds: Executed agreement: Contribution to partnership: Joinder*
*of causes of action: Interest: Appeal: Record.*

1. The agreement of the parties was that plaintiff should investigate
   and locate desirable timber lands; that, on defendants' approval,
   defendant P. should advance the necessary money to purchase the
   lands, he to be repaid with interest; and that, on purchase, they
   would either sell or log them, the profits or losses to be shared
   equally between the parties. *Held,* that this constituted a partner-
   ship, since all shared in the conduct and risks of the business and
   the ultimate division was to be of the profits as such.

2. In an action at law for the recovery of a share of the profits of a.
   partnership agreed to be paid, the answer suggested, but did not.
   clearly allege, a partnership.  The partnership was established by
   plaintiff's own testimony, and both parties proceeded, without ob-
   jection, to introduce all evidence necessary to establish the state-
   of accounts between them.  Not until the hearing of the motion to
   confirm the referee's report did defendants clearly object to the
   adjudication of the amount due in the legal action.  All the trans-
   actions were so completed as to make nothing necessary but the
   ascertainment of a money balance due from one partner to an-
   other.  *Held,* that defendants' conduct was such as to waive any
   objection to the form of action which they might have made by
   reason of the fact that the claim grew out of a partnership.

Smith vs. Putnam and others.

3. A parol contract of partnership for dealing in lands is within the statute of frauds so long as it is still executory; but where, under a partnership agreement, plaintiff explored and found land and standing timber, and after defendants had bought it, the timber was logged, the land sold, and a division of the proceeds made, incomplete only because erroneous in amount, the contract was fully executed, and hence was not within the statute.

4. A finding that a transaction in issue was within a partnership agreement, and not a separate and independent transaction of the defendants in which plaintiff was not a participant, will not be disturbed on appeal, where the evidence of the parties is squarely in conflict, and there are items of circumstantial evidence confirmatory of either theory.

5. Plaintiff and defendants entered into an agreement to purchase and log lands, each to receive one fourth of the net profits, each enterprise to be separate and the profits divided and paid as soon as closed. Three enterprises were taken up and two completed, for which plaintiff received an incorrect sum, as representing his share in one, and a statement of the profits in the other was rendered. The third enterprise was uncompleted and unsettled when he sued at law to recover the sum due him on all three enterprises. *Held*, that the parties had, by agreement, so severed their different transactions that plaintiff's share of the profits in the first two could be properly ascertained without involving the incomplete third enterprise; and that, defendants having by their conduct on the trial waived their right to insist that the relief should be had in a suit in equity, a money judgment was properly rendered for the amount ascertained to be due plaintiff in the first two enterprises.

6. The joinder of an unpaid balance due plaintiff for labor and materials furnished the partnership of which he was a member, with the claims of plaintiff against the firm as a partner, if improper, is waived by failure to seasonably object on that ground.

7. Where the date when the debtor ought to have paid is fixed by agreement, it is error to allow interest from a date before that time.

8. Where plaintiff in one of the transactions of the partnership turned in certain logs of his own, it is error to allow him interest on the price thereof, in the absence of an agreement that he should receive interest on any contributions he should make.

9. Where the record and bill of exceptions do not show that a certain motion was made, other evidence of such fact, even if material, cannot be accepted on appeal.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Reversed.*

The complaint, unverified, alleged that the defendants were copartners under the name of H. C. Putnam & Co., and as such entered into an agreement with the plaintiff in the year 1888 to the effect that if he would investigate, examine, and bring to their attention desirable timber lands, which they approved, they would purchase and either sell or log the same (the plaintiff acting in conjunction with them), and would pay him for his labor in so doing one fourth of the net profits realized by them; also, that they would employ him, at proper prices, to do the logging, and that under such agreement the three parcels known as the "Log Creek lands," the "Thornapple lands," and the "Main Creek lands," were purchased, and profits realized. The details of the complaint need not be further stated.

The answer, also unverified, in terms denied the partnership of the three defendants, but in legal effect admitted it. It, however, denied that they entered into the arrangements alleged in the complaint, but alleged that they individually entered into 'an arrangement with the plaintiff in 1888 whereby he was to find timber and timber lands; *H. C. Putnam* should advance the necessary funds, and from the proceeds should be repaid such advances, with seven per cent. interest; that *Thompson* and *E. B. Putnam* should take charge of the purchase, logging, and sale of the logs; that plaintiff should cut and log the timber, and drive the logs, at prices specified, and that one fourth of the net profits that should be derived from said premises should belong to each of the parties; and that each of the parties should own an undivided one-fourth interest in the lands after the timber had been cut therefrom and sold. The answer admitted that the Log Creek lands and the Main Creek lands were purchased under this arrangement, and that the plaintiff had been paid in full all sums due him thereon; that the Thorn-

apple lands were not purchased in pursuance of said agreement, or any agreement with the plaintiff; and that he had no interest therein. The answer further set up that the arrangement was verbal, and therefore void, under sec. 2307, Stats. 1898.

The court made an order of compulsory reference, and on the trial before the referee the plaintiff testified to the arrangement, which was that such lands as he might find, and after investigation bring to the attention of the defendants, who did in fact constitute a partnership engaged in various kinds of business, should be considered, and, if approved, would be purchased, *H. C. Putnam* advancing any money necessary for the purchase or for the handling of the lands, *Mr. Thompson* keeping the accounts, and the plaintiff superintending any logging operations that might be deemed advisable; that from the proceeds *Mr. Putnam* should be repaid all the advances made by him, with seven per cent. interest; that the profits upon each deal or enterprise that might be undertaken by them should, immediately on its completion, be divided equally among the four parties; and that any losses should be shared in the same proportion. The trial then proceeded, and a large amount of detail evidence was taken as to the purchase, handling, and disposal of the three different enterprises, which were claimed to have been undertaken at different times under the general arrangement above stated, with no express suggestion from the defendants' attorney that he claimed the relationship between plaintiff and defendants to be a partnership, and that he made any objections to the plaintiff's claims, other than those set forth in the answer.

The referee found as a fact that no partnership existed, and reports in his conclusion of law that no question of partnership was litigated on the trial. He states the accounts of the three several enterprises or real-estate purchases, and also the accounts of services rendered by and payments made

to the plaintiff for cutting and driving logs, and finds an amount due from the defendants to the plaintiff of some $5,200.

These findings were in all respects confirmed by the court, whereupon, before judgment, defendants moved to amend their answer: first, by correcting a clerical error; and, secondly, by setting up distinctly, as an objection to recovery, the fact that a partnership existed between plaintiff and the defendants, and that the sums claimed were for profits of a yet unsettled partnership. The latter portion of the application was denied, and judgment rendered. Other facts, so far as material, will appear in the opinion.

Defendants appeal.

For the appellants there were briefs by *Frawley, Bundy & Wilcox,* and oral argument by *C. T. Bundy.* They contended, *inter alia,* that it is settled that standing timber is part of the land whereon it is standing, and a contract for its purchase is a contract for an interest in lands within the statute of frauds. *Strasson v. Montgomery,* 32 Wis. 52; *Warner v. Trow,* 36 Wis. 195; *Young v. Lego,* 36 Wis. 394; *Daniels v. Bailey,* 43 Wis. 566; *Lillie v. Dunbar,* 62 Wis. 198; *Seymour v. Cushway,* 100 Wis. 580. An oral agreement of partnership for the purpose of dealing in lands or standing timber is within the statute of frauds and void, and no action at law for a breach thereof can be maintained. *Bird v. Morrison,* 12 Wis. 138; *Clarke v. McAuliffe,* 81 Wis. 104; *McMillen v. Pratt,* 89 Wis. 612; *Seymour v. Cushway,* 100 Wis. 580. On accounting between partners interest cannot be allowed on advances, overdrafts, or undivided profits, unless by express agreement. *Dexter v. Arnold,* 3 Mason, 284; *Gage v. Parmelee,* 87 Ill. 339; *Buckingham v. Ludlum,* 29 N. J. Eq. 345; *Sweeney v. Neely,* 53 Mich. 422; *Gilman v. Vaughan,* 44 Wis. 646; *Carroll v. Little,* 73 Wis. 52.

For the respondent there was a brief by *Wickham & Farr* and oral argument by *James Wickham.* They contended,

*inter alia*, that the defense of partnership, like any other defense, can be waived if not taken advantage of in the proper way. *Tolford v. Tolford*, 44 Wis. 547; *Candler v. Rossiter*, 10 Wend. 487; *Smith v. Allen*, 18 Johns. 245; *Douthit v. Douthit*, 133 Ind. 26; *Kunneke v. Mapel*, 60 Ohio St. 1; *Whetstone v. Shaw*, 70 Mo. 575; *McCormick v. Ketchum*, 48 Wis. 643; *Leonard v. Rogan*, 20 Wis. 540. The agreement between the parties was not void under the statute of frauds. *Watters v. McGuigan*, 72 Wis. 155; *Treat v. Hiles*, 68 Wis. 344; *Hill v. Palmer*, 56 Wis. 123; *Kickland v. Menasha W. W. Co.* 68 Wis. 34; *Babcock v. Reed*, 99 N. Y. 609.

The following opinion was filed May 15, 1900:

DODGE, J. We are all fully satisfied that the evidence, by a clear preponderance thereof, establishes the existence of a partnership between the plaintiff, *Smith*, on one side, and *H. C. Putnam*, *E. B. Putnam*, and *G. T. Thompson*, on the other, whereby they were to engage in the purchase either of timber lands or standing timber from time to time, as the plaintiff should find and bring to the notice of the others favorable opportunities; that *H. C. Putnam* was to furnish such money as was necessary for the purchase of land or timber, and for handling the same; that the plaintiff, *Smith*, was to superintend any logging that might be decided on, and that *Thompson* was to keep the accounts, and handle the finances, and make sales; that *Putnam* was to be first repaid moneys advanced by him, with seven per cent. interest to the time of their repayment; and that the profits or losses were to be shared equally between the four individuals, which division was to be made as soon as each of the transactions was finished up. That such was the arrangement, plaintiff testifies, and therein is confirmed by the defendants. That this constituted a partnership, as a necessary result of the terms agreed on, seems entirely clear under the authorities. They all shared in the conduct and

the risks of the business, and the ultimate division was to be of the profits as such. George, Partnership, § 17; *Miller v. Price*, 20 Wis. 117; *Upham v. Hewitt,* 42 Wis. 85; *Treat v. Hiles,* 68 Wis. 344; *Clinton B. & I. Works v. First Nat. Bank*, 103 Wis. 117.

Appellants' first principal contention is that an action to close up a partnership, settle accounts between the partners, and divide the property, can only be maintained in equity; that courts of law have not at their command the methods of procedure nor the adjustable forms of decree necessary to accomplish the result. While it is an undoubted general rule that courts of law have not the machinery at their command often necessary to properly settle and close up partnerships, and that such actions must be in equity, yet, where the reason fails because of the fact that all of the transactions are so completed as to make nothing necessary but the ascertainment of a money balance due from certain of the partners to another,— a function which a court of law can perform,— the objection to the entertainment of a suit by such a court is one which may be waived. The objection resulting from the inability of the court to do the things necessary to complete relief no longer exists, and, if the parties consent, the court may act though in a common-law action, and may ascertain what amount is due, and may render judgment therefor, as in any other case of a money demand. *Tolford v. Tolford*, 44 Wis. 547; *McCormick v. Ketchum*, 48 Wis. 643, 644; *Kunneke v. Mapel*, 60 Ohio St. 1; *Whetstone v. Shaw*, 70 Mo. 575, 580; *Trowbridge v. Wetherbee*, 11 Allen, 361, 365. By the answer in this case some facts tending to create a partnership are suggested, but defendants' contention that such relation was created was not at all clearly stated therein. It is ambiguous, and did not fairly notify the plaintiff that the defendants made any objection to his action at law by reason of the fact that the indebtedness claimed by him arose out of partnership transactions. The fact of the partnership

Smith vs. Putnam and others.

was, however, clearly disclosed early in the trial of the case
by the plaintiff's own testimony; but both parties proceeded
without objection to introduce all evidence necessary to es-
tablish the state of the accounts between them, and not until
after the referee's report had been made and judgment was
about to be entered, did defendants clearly object to the ad-
judication of the amount due in this legal action.    It seems
clear that defendants' conduct has been such as to waive any
objection, which they might have made by reason of the fact
that the claim grows out of a partnership, to the ascertain-
ment of whether or not there exists a debt presently due from
the defendants to the plaintiff, and the rendition of a judg-
ment therefor, provided, at least, that nothing is necessary
to accomplish that result which transcends the powers of a
court of law, such as the ascertainment and adjustment of
debts of the firm, or the appointment of a receiver to dispose
of assets yet on hand.

The next objection made by appellants to any recovery is
that the arrangement, whether constituting a partnership
or not, involved a dealing in lands, and is therefore denied
enforcement in court by the statute of frauds.    That such
dealings were involved, as an essential element of the con-
tract, cannot be denied, whether the purchases to be made
thereunder were of the title to lands, or only of the timber
standing thereon.    Nor does the fact that the contract was
for partnership dealing meet the objection.    This court, at
an early day (*Bird v. Morrison*, 12 Wis. 138), adopted the
position that a contract of partnership for dealing in lands
was within the statute, and has adhered thereto ever since.
*Clarke v. McAuliffe*, 81 Wis. 104; *McMillen v. Pratt*, 89 Wis.
612; *Seymour v. Cushway*, 100 Wis. 580.    That view has now
so fully become a rule of property in this state, that we must
adhere to it, notwithstanding the weight and respectability
of the authorities to the contrary elsewhere.    See note to
*Bates v. Babcock* (Cal.), 16 L. R. A. 745; Browne, Stat. Frauds,

§ 262.   In applying the statute of frauds, courts long since recognized an exception, or more properly a distinction, in cases where a contract void by the statute had been fully executed, and one party sought to retain the fruits of the dealing in defiance of his promises.   Such situation was declared to be not within the purpose of, and so not sheltered by, the statute.   It has therefore been held in a vast array of decided cases that where the parties have fully executed all parts of such a contract relating to or affecting interests in land, so that the courts do not need to enforce anything with reference to the land itself, the rights and duties of the parties resulting from their dealings may be enforced, and each of them prevented from using that statute, not as a protection against, but as an effective means of, fraud. Browne, Stat. Frauds, § 116; *Rice v. Roberts*, 24 Wis. 461; *Niland v. Murphy*, 73 Wis. 326; *Pireaux v. Simon*, 79 Wis. 392; *Trowbridge v. Wetherbee*, 11 Allen, 361; *Bowen v. Bell*, 20 Johns. 338; *Remington v. Palmer*, 62 N. Y. 31; *Bork v. Martin*, 132 N. Y. 280; *Hodges v. Green*, 28 Vt. 358; *Gordon v. Tweedy*, 71 Ala. 202; *Negley v. Jeffers*, 28 Ohio St. 90; *Galley v. Galley*, 14 Neb. 174; *Ryan v. Tomlinson*, 39 Cal. 639, 645; *Bibb v. Allen*, 149 U. S. 481, 497.

It will be observed that the above decisions are made under statutes on both sides of the line of distinction pointed out by Dixon, C. J., in *Brandeis v. Neustadtl*, 13 Wis. 142, and the same efficacy is given to completed execution whether the original contract is by the statute merely denied in evidence, or forbidden to be the subject of an action, or, as in New York, Wisconsin, and Nebraska, is declared void.   It should also be noted that in the cases above cited, where this court refused to enforce parol agreements for partnerships dealing in lands, the contracts were still executory.

In the contract before us the partnership, long before suit, had been fully executed, so far as any real-estate rights were concerned, in at least two of the three enterprises under-

taken,— the " Log Creek deal " and the " Thornapple deal."
Plaintiff had explored and found the land or standing tim-
ber, the defendants had bought it, and it had all been either
logged or sold, and the proceeds in money had been received.
Indeed, in the former a division of the money had been made,
not complete only because erroneous in amount.   No more
complete execution of all parts of the agreement in any wise
touching real estate, or affecting any dealings therein, could
well be conceived.   Defendants had not repudiated the con-
tract as void, but had performed it, and had received money
as the fruit of such performance.   As to the third enterprise,
the " Main Creek deal," a fraction of the land is as yet un-
sold; but even that has been denuded of its timber, which
has been sold, and the proceeds received by defendants.   For
reasons to be stated later, however, it is not necessary to de-
cide whether such nearly complete execution is sufficient to
wholly remove the obstacle of the statute of frauds.

Another question preliminary to the details of the judg-
ment is whether the "Thornapple lands" were within the gen-
eral arrangement between plaintiff and defendants, or were
a separate and independent transaction of the defendants
together, or of *H. C. Putnam* alone, in which plaintiff was
not a participant.   The evidence is in conflict, the parties
contradict each other squarely, and there are several items
of circumstantial evidence confirmatory of one or the other
theory.   That being so, the finding of the referee and of the
circuit court that they were so included must stand.   We
certainly do not find that it is opposed to the clear prepon-
derance of evidence.

This brings us to an examination of the situation and the
rights of the parties in detail.   The situation may be sum-
marized thus: In 1888 a negotiation was had, at which cer-
tain terms were agreed on, under which the parties might
handle one land or logging enterprise, or might take up
others, as they decided in the future.   Only one was in act-

ual contemplation at the time. One item of that general agreement was that the profits of each deal were to be divided, and plaintiff's share paid over to him, as soon as it was closed up. Under this arrangement the "Log Creek" enterprise was entered upon in 1888, the "Thornapple" deal in January, 1890, and the "Main Creek" deal in July, 1891. The "Log Creek" enterprise was a purchase of standing timber, a logging thereof, and sale of the logs fully completed,— the money all received and bills all paid by November 12, 1890. The "Thornapple" was a purchase outright of lands, and a sale thereof in bulk the same year, fully completed and price collected by the defendants by April 15, 1891. The "Main Creek" was a purchase of timber lands, logging thereof, and sale of the logs. Those logging operations extended to near the close of 1896, and at the time of trial, in 1898 and 1899, a considerable quantity of the cut lands still remained undisposed of. A small remnant of logs was still "hung up," and to be paid for only as they reached Beef Slough, and some small indebtedness for taxes and trespasses remained unsettled. Each separate enterprise had yielded a measure of clear profit. In June, 1896, the accounts of the Log Creek deal were stated and balanced by *Mr. Thompson*, whose duty that was, and a sum paid over to the plaintiff as his share of the profits, but not so as to make a binding settlement as to correctness of the amount. As early as July, 1896, a statement of the Thornapple accounts was made by plaintiff, and was exhibited to *Thompson*. It apparently did not receive assent or dissent as to correctness, for the reason that plaintiff's interest therein was denied.

In addition to his claim to a share of the net profits in these three enterprises, plaintiff makes claim to certain sums due him as a contractor with the firm for driving certain of the Log Creek logs, and for logging and driving most of the Main Creek logs.

In this situation, it must be conceded that there is no such

Smith vs. Putnam and others.

settlement of partnership accounts and agreement on balance as is uniformly held to support an action at law. It is also apparent that, as to the Main Creek transactions, the time has not yet come when plaintiff is, by the terms of his contract, entitled to a division of profits. Some debts and some credits still remain to be adjusted, and a not inconsiderable part of the property to be disposed of, before it can be said to be closed up. True, the remaining property is mainly real estate, to which a court might not be able to enforce any rights of plaintiff. But the defendants do not repudiate the rights which he claims. They admit that, whenever they shall have sold that land in accordance with the terms of their agreement, its proceeds are to be accounted for. They have the right to insist that such property be disposed of in the contract method, instead of by a court, so long as they do not unreasonably either negligently or wilfully delay. Further, even if the facts justified a demand by plaintiff that the partnership be terminated by decree of a court, the situation would demand the peculiar powers of a court of equity to take control of the remaining property and dispose of it, and to ascertain and discharge any outstanding partnership indebtedness, before final statement of account and division between the partners can be had. *Green v. Stacy,* 90 Wis. 46, 52. The plaintiff cannot, therefore, in this action, properly demand or recover profits earned or to be earned by the partnership dealings in the Main Creek lands.

We are persuaded, however, that such inability to recover his profits on the last-mentioned enterprise need not preclude him as to the others. While it is a general rule that individual transactions constituting parts of a general partnership business cannot, at the will of either party, be severed from the rest and made the basis of suit either at law or equity, that rule does not prevent the parties from agreeing to such severance, nor preclude courts from enforcing the rights on that basis, if it can be done without involving

the rest of the business, when such agreement is made. *Drew v. Ferson*, 22 Wis. 651; *Rose v. Bradley*, 91 Wis. 619; *Gibson v. Moore*, 6 N. H. 547; *Collamer v. Foster*, 26 Vt. 754. As already stated, the agreement of the parties before us in advance severed each deal from any others, and stipulated that the accounts of each should be settled and its profits divided independently of the others. As each was taken up, there was no certainty that there ever would be another. The conduct of one did not involve any of the transactions in either of the others. Indeed, both the Log Creek and Thornapple enterprises were finished up before the Main Creek was entered upon. In May, 1891, plaintiff might have brought his suit for accounting and division in both of the former, and such suit certainly could not have been abated nor confused by the fact that in July following a new and additional enterprise was taken up, in view of the agreement that each should be settled up upon its completion.

We have reached the conclusion that the parties have by agreement so severed the different transactions that the plaintiff's share of profits therein may properly be ascertained and recovered without involving the incomplete Main Creek enterprise; that defendants did, upon the trial, by conduct, waive their right to object that the ascertainment of the amount due plaintiff involved an accounting between partners, which ought to be had in a suit in equity, and did consent that in this action at law the amount might be tried and decided; and that a money judgment may properly be rendered for the amount so ascertained.

The unpaid balance due for cutting and driving the Main Creek logs is, of course, due at law, on contract, and properly recoverable in this form of action. Its joinder with the claims of plaintiff as a partner, if improper, has been waived by omission to object. Sec. 2654, Stats. 1898.

In stating the accounts, especially of the Log Creek deal, trifling errors in allowance of interest exist, in that the

plaintiff is allowed interest from the date when moneys received by defendants first exceeded the amount due *H. C. Putnam* for his advances. This is erroneous, for plaintiff was not entitled to payment of his share of the profits until the transaction was completed. Such was the contract. In *Laycock v. Parker*, 103 Wis. 161, the rule as to demands such as here involved was stated to be that interest should run from the time when the debtor ought to have paid, which time may be fixed by agreement, by law, or, in the absence of such fixing, by demand. Here the date was fixed by the contract. The Log Creek matter was fully completed by receipt of the last payment for logs on November 12, 1890, from which date, and not earlier, plaintiff is entitled to interest. The dates for the payments for logging and driving were also fixed by contract, and are correctly found and applied by the circuit court. Another slight error consists in allowing interest upon an item of $750, the price of certain logs belonging to plaintiff, and turned into the Log Creek transaction. Defendants are allowed interest as if *Mr. Putnam* had advanced the money, which was not the case; and plaintiff is allowed interest from the date when he turned in the logs, to which he, as partner, was not entitled, there being no agreement that he should receive interest on any contributions he might make. Still another error consists in considering three disbursements made by plaintiff in the Main Creek matter as part of his logging account, while they should be treated as contributions to the partnership undertaking, and be allowed him whenever the partnership accounts come to be stated. Those items are: April 15, 1892, paid by Smith & Howe, $35.40; September 1, 1893, paid to Early, for trespass, $27; February 12, 1895, paid to county, for land, $80.

The so-called Till account is merely one of the firm transactions, showing an item of profit for those accounts when they come to be stated, and should not be, as it is, confused

with plaintiff's claim for driving certain logs. We have, therefore, eliminated it from the amounts we find due, but have included plaintiff's charge of $444.79 for driving the Till logs, and the sum of $525.17 paid him. A statement of the accounts resulting in the amounts for which judgment is ordered will be filed with this opinion, but need not form a part thereof for purpose of publication.

With these corrections, and one or two others too trivial to require mention, we reach the conclusion that there is due plaintiff from defendants, for which judgment should properly be rendered in this action: Profits on Log Creek transaction, $841.32, with legal interest from June 16, 1891; profits on Thornapple transaction, $1,082, with interest from August 15, 1891; and balance unpaid on Main Creek logging and driving account, $506.48, with interest from September 26, 1896.

*By the Court.*— Judgment reversed, and cause remanded with directions to render judgment in favor of plaintiff for the amounts above indicated.

BARDEEN, J., dissents.

The following opinion was filed June 21, 1900:

DODGE, J. The argument for appellants on their motion for a rehearing calls our attention to certain inaccuracies of statement in the opinion filed, in asserting that defendants first clearly objected to adjudication of amount due in this, a legal action, after confirmation of the referee's report. The "first clear objection" referred to was the motion to amend the answer so as to set up the existence of the partnership as a defense, and it is true that this motion was presented, not after, but at the same time with, the motion to confirm, and was heard and decided with it. This inaccuracy is, however, wholly immaterial to the conclusion reached, that defendants had, by conduct, assented to in-

Smith vs. Putnam and others.

vestigation and adjudication of the amount due the plaintiff. That conclusion resulted from the voluntary introduction of the evidence as to the accounts after the fact of partnership was fully admitted by plaintiff, continuance of the trial to completion, and the submission to the referee of the rights of the parties for decision upon the pleadings and proofs as they then stood, without objection to the form of action.

Indeed, it is questionable whether such assent might not be inferable from mere procedure with the trial, and even if, at the close of the trial, due attempt to raise the partnership character of the transactions as an objection to the consideration, in action at law, of the rights of the parties, had been made. But that question need not be discussed or answered, for the record discloses no attempt to raise such objection, but, on the contrary, the submission of the merits by both parties to the referee. True, appellants assert that at the close of the evidence they moved, before the referee, for a dismissal on the ground that the claims of plaintiff arose out of unsettled partnership accounts; but no such motion appears of record, nor does the bill of exceptions certify that any was made. We cannot accept any other evidence of such fact, even if material,— not even the affidavit of appellants' counsel.

Other contentions now urged by appellants were fully considered in the original decision of the case, and present no reason for rehearing.

*By the Court.*— Appellants' motion for rehearing is denied, with $25 costs.