BELT LINE REALTY COMPANY, Appellant, vs. DICK and others, Respondents.

*February 5—March 4, 1930.*

For the appellant there was a brief by *Dewey B. Gill* of Milwaukee, and oral argument by *Mr. Charles D. Ashley* of Milwaukee and *Mr. Gill.*

For the respondents there was a brief by *Orth & Orth* of Milwaukee, and oral argument by *Charles A. Orth.*

FRITZ, J. From undisputed evidence and the court's findings based upon evidence as to which there is some conflict, the following facts, material on this appeal, appear : Plaintiff, as the owner of 287 lots, on May 22, 1919, in writing, contracted with the defendants for their services in manag-

ing the improvement, exploitation, and sale of the lots. The sales were to be made upon initial payments of at least twenty-five per cent. and at, or in excess of, prices which plaintiff had specified. The proceeds of the sales, after specified advances to defendants, were to be first applied toward the payment of interest on plaintiff's capital investment of $88,000 and the "taxes, improvements, and expenses." Then if, "after deducting the costs of all improvements, platting, general and special taxes, interest, advertising, and all other expenses aforesaid," there remained any balance, that was to be applied in reduction of plaintiff's capital investment until plaintiff had received the entire $88,000, with interest. Thereupon, the surplus remaining in money and securities was to be divided equally between the parties, and plaintiff was to convey to defendants a half interest in all unsold lots. The contract was to continue in effect for seven years, but plaintiff reserved the option to terminate it in four years if the sales did not amount to $30,000. No contracts were to be let or improvements made except with the written consent of plaintiff. An annual account of all transactions was to be kept and submitted by defendants to plaintiff, "to be by them examined and approved by their signature if found correct, and said approved account shall form the basis of following year's account."

Defendants promptly commenced performance, but up to September, 1920, were not very successful in effecting sales because the required initial payment was too large. On September 20, 1920, defendants, at a meeting of plaintiff's directors, submitted, and the directors authorized defendants to make, a proposed contract with C. N. Lodge & Company, under which the latter's selling services were engaged to sell the lots on the basis of small initial and instalment payments, with credits to purchasers for specified bonuses and discounts on cash payments in excess of the specified initial and instalment payments. Lodge & Company were

to receive for their sales service whatever they obtained in excess of $19 per front foot, and also one half of the payments forfeited by purchasers, provided, however, that each of the parties should bear the expense incurred for collection fees in collecting their share of the payments from the purchasers. There is no mention in the minutes of that directors' meeting on September 20, 1920, of the Lodge & Company contract, but there is a reference to the authorization to sell lots at a minimum of $19 per front foot. Except for that reference, no written memorandum has been signed by the plaintiff which, directly or indirectly, recognizes or consents to the contract with Lodge & Company. Thereafter, for about one year, Lodge & Company, with knowledge of plaintiff's officers, sold lots under their contract, and out of their sales realized and received, from collections made during several years, amounts in excess of the owner's price of $19 per front foot, and also received their share of the payments forfeited by purchasers.

At plaintiff's stockholders' meetings held annually in September of 1921 to 1925, inclusive, plaintiff's acting treasurer annually submitted, as part of his report, an annual account and statement, prepared and submitted by defendants to plaintiff, of the assets and liabilities, and the defendants' receipts and disbursements in relation to their transactions under the contract of May 22, 1919. Each of those annual statements had items as to the sales by Lodge & Company, stating the gross amounts of Lodge & Company's interest in the sales price, the amounts paid to or received by Lodge & Company, and the balance still owing to Lodge & Company out of the unpaid balances of purchase prices owing on the Lodge & Company sales. Some of the annual statements also showed the one-half interest of Lodge & Company in forfeited payments; the debits because of allowances to purchasers for cash discounts and bonuses, and

because of defendants' disbursements for collection fees on account of Lodge & Company sales; and also a debit for an adjustment item of $33.81 on Lodge & Company sales. At each of those annual meetings of plaintiff's stockholders the treasurer's report was duly accepted and placed on file. After Lodge & Company stopped selling, defendants sold the balance of the lots at prices in excess of the plaintiff's specified prices, and fully accounted to plaintiff for the excess proceeds.

The trial court concluded that the contract between plaintiff and the defendants was fully performed; that the defendants fully and fairly accounted to plaintiff for the net proceeds of the sales; that there was nothing due from either party to the other; and that, owing to its conduct, plaintiff would, in any event, in equity and good conscience, be estopped from making any claim against the defendants.

Plaintiff's principal contention is that, in accounting for the proceeds of the sales of plaintiff's land, defendants are not entitled to any credit for sums aggregating $5,375.43, which were retained or received by Lodge & Company for their compensation under their sales service contract; for sums aggregating $1,159.14, which were paid as fees for collecting from Lodge & Company purchasers; for $1,704.55 for allowances as bonuses and cash discounts to such purchasers; and for a disbursement of $201.60 for advertising. All of those items had been currently reported by the defendants in their annual accounts and statements to plaintiff as part of the transactions of the joint adventure in which the parties were engaged under their contract of May 22, 1919. However, plaintiff contends that that contract did not authorize the transactions with Lodge & Company, and the resulting expense for their sales service and the bonuses and discount allowances to their purchasers for cash payments; that plaintiff did not in any writing, signed as required by the statute of frauds, consent to the Lodge & Company

transaction or the modification of the contract of May 22, 1919; that, as that original contract was in relation to dealings in land and the conveyance of land, and therefore required by the statute of frauds to be in writing, it could not be effectually modified by an oral agreement; and that the plaintiff is not estopped to deny the validity of such oral modification.

It is true that because of its subject matter the original contract was within the statute of frauds; that it could not be effectually modified by an oral agreement; and that plaintiff is not estopped to deny the validity of an oral modification. However, the plaintiff is seeking to recover additional amounts to which it claims to be entitled as its share of the net proceeds of a joint adventure to improve, exploit, and sell certain real estate and to share equally in the net proceeds thereof, after repayment of plaintiff's capital investment and the payment of charges for interest, taxes, improvements, advertising, and expenses. Those net proceeds were derived partly from the sales by Lodge & Company, with knowledge on the part of the plaintiff, before the services were rendered, that Lodge & Company's compensation and the bonuses and discounts to purchasers were to be deducted from the gross sales prices obtained by Lodge & Company, and that, as Lodge & Company were effecting sales, and collections were being accounted for to the plaintiff, the joint adventure was having the benefit of Lodge & Company's extraordinary sales services and methods, in furtherance of a sales plan that differed materially from the terms of sale specified in the original contract. Plaintiff (as well as defendants) is only entitled to share equally in so much of the net proceeds of the joint adventure as remains after deducting the stipulated charges and expenses authorized or incurred with their acquiescence. Even though the Lodge & Company sales were made under an agreement to which plaintiff, as one of the parties to the joint adventure, con-

sented only orally, that agreement has been fully performed, and the expenses for Lodge & Company's services and allowances were incurred and paid under and in reliance upon plaintiff's oral consent; and, to the extent of the proceeds derived in execution thereof, plaintiff's share of, the proceeds is chargeable with the expenses authorized and incurred by reason of its oral consent. To the extent that there has been performance under such oral consent, that consent is binding upon the plaintiff, and the rights and duties of the parties are subject to obligations enforceable by virtue thereof. "The rights and duties of parties, resulting from their dealings in lands, so far as executed at least, may be enforced." *Steuerwald v. Richter*, 158 Wis. 597, 602, 149 N. W. 692.

Consequently, the disbursements and charges on account of which plaintiff seeks to recover in this action were proper, and the judgment should be affirmed.

*By the Court.*—Judgment affirmed.