Frank P. SCHARABOK and Lorena M. Scharabok, his wife, Plaintiffs,

v.

John MURPHY and Dorothy Murphy, his wife, and Al Murphy, Defendants and Third Party Plaintiffs (Luke J. Kauth, Third Party Defendant).

No. 55-C-158.

United States District Court
E. D. Wisconsin.

Jan. 25, 1960.

Max Raskin, Milwaukee, Wis., for plaintiffs.

**2**

Ray T. McCann, Milwaukee, Wis., and James H. Plier, Oconto, Wis., for defendants and third party plaintiffs.

Cyril C. Foster, Milwaukee, Wis., for third party defendant.

GRUBB, District Judge.

Action by a vendee of a contract to convey real estate for restitution based upon the claim that the contract was breached by the vendor. Defendants, John and Dorothy Murphy, were the vendors; Al Murphy was a broker representing the vendors; and the third party defendant was the attorney representing the plaintiffs.

The real estate was a motel located in Florida. Plaintiffs are asking for the return of $30,121.84 which they paid toward the purchase price of $85,000 based upon the failure of defendants to convey the real estate free and clear of all encumbrances. Defendants claim that the original contract was orally modified in that plaintiffs agreed to take the property subject to two mortgages and that, as modified, it was performed by defendants. The third party defendant was joined on the ground that if the defendants were liable to the plaintiffs, then the third party defendant would be liable to the defendants because he misrepresented his authority.

On August 28, 1954, plaintiffs signed an offer to purchase which was shortly accepted by defendants. The terms of this offer were that plaintiffs were to pay and did tender $1,000 with the offer, $9,000 at the time of the acceptance, $30,000 on or before November 15, 1954, and the balance of $45,000 in monthly payments of $500. The offer provided that legal possession was to be delivered to the buyers "on date of closing" and that physical occupancy was to be given "on the date of closing the sale." The payments were to be retained by Al Murphy in his trust account until the transaction was closed. November 15, 1954, was designated as the closing date.

The contract provided that "The seller shall, upon payment of the purchase price, convey the property by good and sufficient warranty deed, free and clear of all liens and encumbrances * * *." Sellers were to furnish an up-to-date abstract fifteen days prior to closing or, in the alternative, a title policy in the amount of $85,000. In case of the failure of the sellers to furnish marketable title, all moneys paid to the sellers were to be returned to the buyers.

There is no provision in the contract itself for the giving of a land contract or for the sellers taking a mortgage back to secure the $45,000. Plaintiff, Frank Scharabok, in his deposition testified as follows:

"* * * Then I said that I would be willing to purchase the St. Petersburg property under the terms of paying $10,000 down and $30,000 more at the time of closing, and they were to furnish me a first mortgage of $45,000 at 4½% interest, payable monthly, $500 a month. And that I could pay over and beyond that sum at any time that any payment was due. And that I was willing to give them $1,000 earnest money immediately, which money to the best of my knowledge was accepted that night."

At a meeting in the office of Al Murphy on September 1, 1954, plaintiffs informed the Murphys that Luke Kauth was their attorney and would handle the transaction for them.

The testimony shows that John Murphy was in need of money because he had contracted to purchase a hotel. The Scharaboks wished to move to Florida immediately so that their children could enter school there in the fall term. These desires culminated in meetings in the office of Luke Kauth held on two of three days; namely, September 7, 8, and 9, 1954. There is a conflict in the evidence as to the two days on which these meetings took place, but the exact dates of the meetings are immaterial to the outcome of this case. They will be treated as one meeting for the reason that they merged with one another.

At these meetings the buyers wished to secure money immediately to accelerate

the closing date. Kauth endeavored to raise money for the buyers to make payments. At these meetings the subject of the state of the title was also discussed. The existence of the first and second mortgages was disclosed and their amounts, and a letter was circulated from the holder of the second mortgage with respect to waiving an acceleration provision. It provided that if the property were sold, the mortgage would immediately become due and payable. In this letter the second mortgagee tentatively agreed to waive the acceleration provision upon payment of $450.

Kauth testified that the acceleration clause in the second mortgage was discussed, that he asked who was going to pay the $450 due on it, and that no one answered until Scharabok in effect said that $450 was not going to hold up the deal. This testimony is undisputed.

Kauth's further testimony that Scharabok told him at these meetings to get money to close the deal, to close the deal for him (Scharabok), and to close the motel deal as best he could is also not disputed by Scharabok, nor was Kauth's testimony that the statements were made by Scharabok because he and his family planned to and did leave for Florida on September 10, 1954; also, that a tentative closing date of October 9, 1954, was agreed upon but it turned out to be impossible to close the matter on that date because of financial difficulties.

Scharabok and his family arrived in Florida on September 12, 1954. They occupied two units in the motel until the motel was sold on foreclosure of the second mortgage in January, 1955. There is no evidence that the Scharaboks ever took possession of the motel itself or its management, or that they collected any rents. The Scharaboks simply lived in the two units. The Murphys' motel manager remained in nominal charge during the entire period.

In Frank Scharabok's deposition which was read into evidence, he testified that he told the Murphys that Kauth was going to take charge of the deal for him.

This was done at the September 8, 1954, meeting. He also testified that Kauth handled all of the Scharabok affairs that were left in Wisconsin; that Kauth acted for him as his attorney in the closing of the transaction about the motel; that he told John Murphy that he had full faith and confidence in Kauth; that Kauth would carry on and close the transaction on behalf of the Scharaboks in Scharabok's absence; and that Kauth would in fact do so. He did not claim that Kauth in closing the transaction did anything he was not authorized to do. He was satisfied with what Kauth did; he did not claim that Kauth exceeded his authority, also that Kauth accepted the deed on his behalf.

█ Frank Scharabok did not testify at the trial, and no explanation was given for his absence. There is the presumption that if called, his testimony would have been adverse because of the unexplained failure to call him, a plaintiff and a very important witness in this controversy. Coney v. Milwaukee & S. T. Corp., 8 Wis.2d 520, 99 N.W.2d 713, among other authorities.

On September 7, 1954, $6,322 was paid to the Murphys. On September 18, 1954, the $10,000 held in trust by Al Murphy was released to John Murphy, and on October 13, 1954, $14,121.84 was paid to the Murphys by Kauth.

In the September meetings, in addition to the discussion of the letter from the second mortgagee, John Crummie, Kauth placed a call to Attorney Richard Miller, Crummie's attorney, and discussed the acceleration clause of the mortgage. Kauth also called the St. Petersburg Federal Savings and Loan Association to ascertain the balance of the first mortgage.

The court finds that there were negotiations relative to modifying the original contract to provide that the plaintiffs were to take the property subject to the first and second mortgages. While the testimony is not as definite and satisfactory as it might be with reference to what was actually agreed to concerning

taking the property subject to these mortgages, the testimony of Frank Scharabok in his deposition as to the authority of Kauth indicates and the court finds that if there was no definite agreement with reference to these mortgages in the September meetings, the plaintiffs authorized Kauth to work out the details and close the transaction.

Frank Scharabok wrote to Kauth on September 17, 1954, advising that he had not paid any rent and that the manager of the motel stated he should settle with Murphy. On October 13, 1954, Al Murphy delivered the deed to Kauth. Kauth accepted the deed with the statement that he would send it to Scharabok. He also remarked that the matter of the second mortgage had not been cleared up. The deed was actually forwarded to Scharabok on October 27, 1954. Kauth stated that the delay was caused by the fact that there were other matters pending, and he wanted to send all papers to Scharabok at the same time. The deed as delivered stated that the property was transferred subject to both mortgages.

An incomplete and ambiguous closing statement prepared by Al Murphy was also turned over to Kauth with the deed. On that occasion Kauth turned over the check for $14,121.84. In his letter forwarding the deed to Scharabok, Kauth stated in part:

"I am also encolsing (sic) herewith a warranty deed for the place you purchased in St. Petersburg along with a check to cover the filing stamps. I would appreciate having you stop at the St. Petersburg Federal Savings and Loan Association advising them that you are the new owner. When you go to the Savings and Loan Association, take the enclosed copy of a letter with you for the purpose of identifying yourself. I believe that will be an aid in transferring things. Also contact Mr. Richard A. Miller and have him prepare an affidavit regarding the ficticious (sic) name and also for the purpose of checking with his client regarding the second mortgage. We are also enclosing the pass book No. 6816 showing the loan accounting of The Murphy's. I am also enclosing herewith my copy of the Title Insurance Policy covering the premises you purchased from the Murphy's. I believe it advisable to contact the West Coast Title Company for the purpose of taking out a like policy."

Scharabok did not contact the Murphys upon receipt of this letter and deed.

Kauth's testimony is also undisputed that between October 10 and 15, 1954, Scharabok called him long distance, and in that conversation Kauth mentioned to Scharabok that he had obtained money to close the motel deal. Scharabok responded, "good."

Kauth also testified that on October 26, 1954, Scharabok called him and asked him to send the deed, and that on November 1st Scharabok again called him and said that the motel was not what he thought it was going to be and asked if he could get out of the deal. Kauth testified that he replied "no"—that he was sorry but the deal was closed.

Kauth claimed that Scharabok said there was a road under construction in front of the motel. Mrs. Scharabok and her daughter denied that there was any such construction. Al Murphy testified that on November 15, 1954, when he was in Florida the road in front of the motel was under construction.

Some time in early November Scharabok called Kauth and instructed him not to turn over a check in the sum of $303.-08 to the Murphys. On the face of this check is the notation, "Covering payment on John Murphy Mtg. dated 9/22/54." John Murphy testified that he had made a payment on the first mortgage in September, 1954. He did not make the payment on the second mortgage due November 29, 1954. The forwarding of this check is further evidence that as of that time Scharabok was agreeable to closing the deal under the modified agreement; namely, subject to the mortgages.

In November, 1954, the Murphys claimed deposits which they had made with a laundry and utility companies as against the bills which had been run up by the motel. Prior to the Murphys doing so, there had been further negotiations with Scharabok in the office of Richard Miller in Florida, at which time Scharabok stated that he would not accept the deed because it was not in conformance with the original contract.

On December 10, 1954, foreclosure was started on the second mortgage because the $500 payment due November 29, 1954, had not been made. The property was sold on foreclosure. John Murphy had notice of the foreclosure action but did not defend it or make any appearance. A default judgment was taken.

Apparently no bill of sale to the furnishings of the motel was ever delivered or requested, and no abstract or title guaranty policy was ever delivered. However, Kauth did have a certificate from the Title Guaranty Company covering the state of the title. No insurance policies were actually transferred although Kauth was given a statement showing what the insurance was.

While this transaction was handled in an unbelievably loose fashion by Kauth in that he failed to protect Scharabok or to insist that he be protected before making payments and accepting the deed, there is Scharabok's own testimony in his deposition that Kauth was given blanket authority to handle the matter for him.

Plaintiffs raise the question of the statute of frauds. At the pretrial conference it was stipulated that this matter was to be governed by the law of the State of Wisconsin. With reference to the contention that Kauth's authority had to be in writing, the following was stated by the Wisconsin Supreme Court in 1953 in Zuhak v. Rose, 264 Wis. 286, 293, 58 N.W.2d 693, 697, 37 A.L.R.2d 1041:

"Defendant submits that written authority to sell land must be given to an agent in order to bind the owner of land to a contract of sale negotiated by that agent. Bohr's authority was not in writing. It is well-established Wisconsin law that while estates and interests in lands cannot be created by an agent unless he is authorized in writing, section 240.06, Stats., an agent may bind his principal by a contract for the sale of land satisfying the statute of frauds though his own authority as agent may have been by parol. Kreutzer v. Lynch, 1904, 122 Wis. 474, 479, 100 N.W. 887; Brown v. Griswold, 1901, 109 Wis. 275, 279, 85 N.W. 363."

 The Wisconsin cases support the contention of the defendant that the statute of frauds has no affect on a fully executed contract. Larsen v. Johnson, 1890, 78 Wis. 300, 47 N.W. 615; Smith v. Putnam, 1900, 107 Wis. 155, 82 N.W. 1077, 83 N.W. 288; Rowell v. Barber, 1910, 142 Wis. 304, 125 N.W. 937, 27 L.R.A.,N.S., 1140; Huntington v. Burdeau, 1912, 149 Wis. 263, 135 N.W. 845; Johnson v. Bank of Sun Prairie, 1914, 155 Wis. 603, 145 N.W. 178; Steuerwald v. Richter, 1914, 158 Wis. 597, 149 N.W. 692; and Belt Line Realty Co. v. Dick, 1930, 201 Wis. 159, 229 N.W. 639. This appears to be the general rule. See 37 C.J.S. Frauds, Statute of § 240; 49 Am.Juris., Statute of Fraud, § 550; and 1 Restatement of the Law of Contracts, § 219.

 Because the court finds that the original contract was modified by Kauth who had been clothed with complete authority by plaintiffs and that he accepted the deed and "performance," even though it was not complete, and that he was authorized on behalf of the plaintiffs to handle the matter without restrictions, judgment must be entered in favor of the defendants, John Murphy, Dorothy Murphy, and Al Murphy, and in favor of the third party defendant, Luke J. Kauth. Counsel for the defendants is directed to prepare findings of fact, conclusions of law, and order for judgment in conformity with this decision, submitting the same to counsel for plaintiffs and counsel for third party defendant for approval as to form only.