ZUHAK, Respondent, vs. ROSE, Appellant.*

*May 7—June 2, 1953.*

* Motion for rehearing denied, with $25 costs, on September 11, 1953.

For the appellant there were briefs by *Lawrence S. Ruetz* of Kenosha, *Godfrey & Godfrey* of Elkhorn, and *Thomas, Orr, Isaksen & Werner* of Madison, and oral argument by *Alfred L. Godfrey.*

For the respondent there was a brief by *Morrissy, Morrissy & Zastrow* of Elkhorn, and oral argument by *Erwin C. Zastrow.*

BROWN, J. Defendant's appeal rests principally on his contention that there is no contract between plaintiff and defendant; hence specific performance of one may not be ordered.

We consider that a contract did arise out of the facts and circumstances of this auction whereby defendant's offer to sell to the highest bidder without reserve was accepted by plaintiff with his bid of $41,000. The letter by Bohr to Mr. and Mrs. Rose whereby he engaged to find a purchaser at a price satisfactory to the Roses in order to be entitled to a commission is immaterial here, however relevant it might be in an action by Bohr for compensation. Defendant's liability rests on what he held out to the plaintiff, not on his arrangements with his auctioneer. Defendant was responsible for informing plaintiff by the Tribune advertisement, by circulars distributed at the auction, and by the auctioneer's oral announcement, that there was to be a complete liquidation of all the advertised property without reserve, and that the realty would be sold as a whole or piecemeal, whichever brought the most money. Defendant made no correction. He supplemented Bohr's announcement by declaring that his half of the standing crops went with the land. He is bound by the terms so stated.

The words "without reserve" as used in auctions are words of art, assuring prospective bidders that the property will actually go to the bidder offering the highest price. The seller may not nullify this purpose by bidding himself or through an agent, nor by withdrawing the property from sale if he is not pleased with the bids. Thus, the seller may not refuse to accept a bid where the auction is without reserve; the bid itself establishes a right in the bidder to have the property unless someone else by raising his bid succeeds to his right.

Sec. 121.21 (2), Stats. (the Uniform Sales Act), states:

"A sale by auction is complete when the auctioneer announces its completion by the fall of the hammer, or in other customary manner. Until such announcement is made, any bidder may retract his bid; and the auctioneer may withdraw the goods from sale *unless the auction has been announced to be without reserve*." (Emphasis supplied.)

Admittedly the Sales Act deals with personal property but there is no reason to suppose that the meaning of the words "without reserve" varies depending on whether at the moment the auctioneer is offering land or goods. Defendant says that the auctioneer had not completed this sale by dropping his hammer or otherwise. That, of course, is true, but the bidding had not ended. By interrupting the sale defendant did not deprive plaintiff of his position as highest bidder nor divest him of the rights accompanying that position. He merely deprived himself of the chance that some other person would top plaintiff's bid.

"If the sale is expressly announced to be 'without reserve,' however, the owner may be held liable for a withdrawal of the property from the sale after a bid. In that case after a bid has been made the auctioneer cannot withdraw. These common-law principles are adopted by the Uniform Sales Act." 5 Am. Jur., Auctions, p. 456, sec. 17.

". . . where a sale is advertised or stated to be without reserve, there is an implied guaranty that the property is to be sold to the highest bidder, and each bidder has the right to assume that all previous bids are genuine, and the seller in substance so assures him; . . ." 7 C. J. S., Auctions and Auctioneers, p. 1257, sec. 7.

"4. A advertises a sale of his household furniture without reserve. An article is put up for sale at the auction and B is the highest *bona fide* bidder; but A, dissatisfied with the bidding, either accepts a higher fictitious bid from an agent employed for the purpose, or openly withdraws the article from sale. He also withdraws all the rest of the furniture

from the sale. In either case A is bound by contract to B to sell to him the article on which he was the highest *bona fide* bidder, but neither B nor the others at the auction have legal ground for complaint that the remainder of the furniture not yet actually put up for sale is withdrawn from sale." Restatement, 1 Contracts, p. 35, sec. 27, illustration 4.

We conclude that when the real estate in question was put up for sale and the first bid made on it, defendant could no longer withdraw it but was bound to accept the highest bid unless other bids for different combinations of parcels or bids for the farm as a whole produced more money, as specified in the advertisement. Defendant cannot defeat the right which plaintiff had acquired as highest bidder either by withdrawing the specific land from sale or by failing to fulfil the promise of the advertisement that the land would be offered as a whole or in other combinations. By defendant's action he is bound to the bids as they stood when he stopped the sale.

Defendant also relies on the claim that no memorandum of sale sufficient under the statute of frauds was given to plaintiff. The trial court found the memorandum actually given by Bohr and his associate was sufficient under the circumstances. We think it is immaterial here. Defendant discharged the auctioneer, thereby revoking his authority to give any memorandum and defendant left the scene. Under the circumstances he cannot complain that plaintiff has no memorandum.

Defendant submits that written authority to sell land must be given to an agent in order to bind the owner of land to a contract of sale negotiated by that agent. Bohr's authority was not in writing. It is well-established Wisconsin law that while estates and interests in lands cannot be created by an agent unless he is authorized in writing (sec. 240.06, Stats.), an agent may bind his principal by a contract for the sale of land satisfying the statute of frauds though his own authority as agent may have been by parol. *Kreutzer v. Lynch* (1904),

122 Wis. 474, 479, 100 N. W. 887; *Brown v. Griswold* (1901), 109 Wis. 275, 279, 85 N. W. 363. We observe, also, that while sec. 240.06 demands that the authority of an agent who creates, etc., estates or interests in lands must be in writing, the requirement of *written* authority is omitted in sec. 240.08 dealing with *contracts* by an agent for the sale of lands or interests therein. This is in complete harmony with the *Kreutzer* and *Brown Cases* just cited. (And see the note in 27 A. L. R. 616, 617, listing the jurisdictions, including Wisconsin, in which this rule prevails.)

Defendant also submits that plaintiff withdrew his offer of $41,000. The record shows that defendant and his attorney broke up the sale and discharged the auctioneer. Plaintiff then approached defendant and offered him $45,000 which defendant refused. The auction was over. Plaintiff could neither withdraw a bid nor make a new one. His offer was for a private sale. The refusal simply left him with such rights as he had when the auction was stopped.

Defendant also submits that he had a right at 3:30 or 4 p. m. to stop the sale because his advertisement announced that real estate would be sold from 1:30 to 2:30 p. m. We think that he waived such limits by continuing the sale past the time stated but even if he had the right to end it at any time after 2:30 o'clock the exercise of the right could do no more than close the bidding. Defendant could not thereby, in a sale without reserve, deprive the highest bidder of the rights which he had gained by a bid made before the close.

Defendant submits that in a suit for specific performance Mrs. Rose was a necessary party because she was joint tenant with her husband in the greater part of the property. In the Tribune advertisement and in the publicity at the scene of the auction Rose held himself out as owner. The contractual obligations between plaintiff and defendant arising out of such representations did not and cannot include Mrs. Rose. It is possible that defendant cannot perform his contract,

but by no means certain. He may be able to acquire the property or Mrs. Rose, who attended the sale and helped at it, may intend to join with him in a conveyance. We consider that the trial court handled the matter well. If Rose can perform specifically the judgment requires him to do so. If he cannot, jurisdiction is retained to abate the price, conformably to what is conveyed, or to allow damages for the breach of the contract.

*By the Court.*—Judgment affirmed.* Respondent's brief necessarily exceeded 50 pages and his request for the allowance of full costs is hereby granted.

\* Mandate vacated on September 30, 1953, pursuant to stipulation of the parties, but the opinion stands as reported. REPORTER.