**UNITED STATES of America, Plaintiff,**

v.

**Louis VON CSEH et al., Defendants.**
**Civ. No. 70 H 1069.**

United States District Court,
S. D. Texas,
Houston Division.

Nov. 1, 1972.

Anthony J. P. Farris, U. S. Atty., Olney Wallis, Asst. U. S. Atty., Houston, Tex., Michael Andolina, Dept. of Justice, Washington, D. C., for plaintiff.

Baker & Botts, Ralph S. Carrigan, Houston, Tex., for Mr. & Mrs. Claude T. Allen.

Mitchell M. Bailey, New York City, for Irene Von Cseh.

SEALS, District Judge.

MEMORANDUM OPINION:

The Government brought this suit to foreclose a tax lien. This Court has jurisdiction by virtue of Sections 1340 and 1345 of Title 28, United States Code, and Section 7402(a) of the Internal Revenue Code of 1954 [26 U.S.C. § 7402(a)].

It would seem that either Mark Twain or Will Rogers said something that would cover this situation, but it is hard enough to find the applicable law, so the facts will have to speak for themselves.

On June 27, 1972, the Government presented its case against attorney Claude T. Allen and his wife in an effort to foreclose on a painting owned by Mrs. Allen. The Government claimed a lien existed against the painting through its former owner. The painting's previous owner had been the defendant, Irene Von Cseh. The painting had been purchased for Mrs. Allen by Mr. Allen's secretary at a judicial sale at which Mr. Allen and Houston attorney James Cowan served as "trustees" for the painting to be auctioned. If that is not confusing enough, Allen had represented Count Ivan Podgoursky in a federal suit in which Mr. and Mrs. Von Cseh, represented by Cowan, sued Podgoursky to recover possession of the painting (Civil Action No. 13,453, So.Dist.Tex.). By way of counterclaim, Podgoursky sought to establish that he owned the painting by virtue of a lien against Louis Von Cseh for services performed. The Von Csehs maintained that ownership was in Irene, not Louis, and that the claimed lien was without effect. Podgoursky died while the litigation was pending

and shortly thereafter his attorney (Allen) reached a settlement with the Von Csehs, and on November 1, 1965, Judge Hannay signed a final judgment which ordered the sale of the painting at public auction, unless sold within one year, with the first three thousand dollars to go to Podgoursky's executrix and all proceeds in excess of that amount to go to Irene Von Cseh. The attorneys Allen and Cowan were appointed "trustees" of the painting "for the benefit of Irene Von Cseh" pending the sale. Allen and Cowan attempted unsuccessfully to sell the painting and on December 6, 1966, auctioned the painting. The high bid was made by Allen's secretary who purchased the painting for Allen's wife. The bid was two hundred and fifty dollars.

The painting portrays three kings paying homage to the Christ-child and has been referred to as the "Adoration of the Magi." The testimony indicates that Von Cseh attributed its creation to Sir Anthony Van Dyke (1599–1641). A portrait painter of great renown, Van Dyke was born in Antwerp and was a student of Rubens. In later life he was the painter to the court of the Infanta Isabella of the Spanish Netherlands and to the court of King Charles I of England who knighted him.

Neither the Government nor the defendant presented any proof as to its origin, although the Government did present proof on the issue of value. Fortunately, this Court does not have to decide whether a great portraitist executed the painting in suit. The issue is whether or not the United States may have the sale set aside.

The Government advances two theories. First, that the sale by the trustee, Allen, to his wife violates provisions of the Texas Trust Act, Vernon's Ann.Tex. St. Art. 7425b–12, and is therefore void as to the Government which is a creditor of Mrs. Von Cseh. Second, that the Government has liens totaling $18,787.55 against Mrs. Von Cseh which attached to the painting and that Mrs. Allen is not a "purchaser" protected from those

liens within the meaning of 26 U.S.C. § 6323. The defense contends that the Government has no standing to attack the sale since it is only "voidable" and can be attacked only by beneficiaries of the trust; that Allen was not a "trustee"; that Mrs. Allen was a "purchaser," and even if she was not, that she purchased at a judicial sale and is protected by the terms of 26 U.S.C. § 7425(a).

■■ It is the policy of the law to sustain judicial sales and they are presumptively valid. McCardell v. Lea, 111 Tex. 380, 235 S.W. 518 (1921); Hidalgo County Water Imp. Dist. No. 2 v. Dean, 366 S.W.2d 703 (Tex.Civ.App.1963, ref. n. r. e.); and see, Cameron v. Saathoff, 363 S.W.2d 884 (Tex.Civ.App.1962, ref. n. r. e.). This policy is as applicable here as it is in the case of a sheriff's sale.

■ The first question then is the validity of the sale. Since the sale was the product of a diversity suit then, under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), Texas law determines the sale's validity. The burden is on the complaining party to establish invalidity. Kolbo v. Blair, 379 S.W.2d 125 (Tex. Civ.App.1964, ref. n. r. e.). For the sale to be void the complainant must show either a fraud which deceived the complainant, Dilley v. Jasper Lumber Co., 103 Tex. 22, 122 S.W. 255 (1909), or "both irregularity calculated to affect the sale and a gross inadequacy of price." Tex.Jur.2d Judicial Sales § 13 citing Dilley v. Jasper Lumber Co. The Government has never contended that Allen engaged in actual fraud, but it has contended that the sale contained an irregularity and that the price was woefully inadequate.

While the United States did not perfect its lien against Irene Von Cseh until February 22, 1972, when it was filed in New York City (Govt.Ex. 8), it may have been a judgment creditor of Irene Von Cseh (the beneficiary of the trust created by the court order) and as such would have the requisite interest to attack the sale's validity. 35 Tex.Jur.2d Judicial Sales § 13. The Court uses "may have been" advisedly since the Government introduced certificates of assessments and payments of Louis and Irene Von Cseh (Govt.Ex. 1–3) but did not introduce the judgment of the Tax Court in Louis Von Cseh and Irene Von Cseh v. Commissioner (Dkt.No.87790, August 28, 1964) claimed to support one of the assessments, nor did the United States prove a demand for payment upon Irene Von Cseh, a prerequisite to the establishment of a lien under 26 U. S.C. § 6321.

This case should not go off on a "standing" question especially where the Court is convinced that if allowed to reopen the Government could easily prove the existence of the judgment of the Tax Court.

■ The Government's contention that the sale is void by reason of an irregularity coupled with a grossly inadequate price must fail. The claimed irregularity is that in the "Notice To All Persons" the painting's trustees included a recitation of the existence of a federal tax lien against Louis Von Cseh for $242,675.19, and stated that title would be conveyed to the successful bidder subject to whatever rights the Government might have by virtue of the lien (Govt. Ex. 6). However, at the time immediately preceding the auction the Government claimed that the painting was the property of Louis Von Cseh and that it had a valid existing lien against Louis filed of record in New York City on May 19, 1965, and that the Government's position had been made known to Allen and a copy of the lien filed with the County Clerk of Harris County, Texas, on December 6, 1966, (Deft.Ex. 4, 7 and 8). For all Allen and Cowan knew the United States might be correct in its assertions. If the auction notice was to be adequate and equitable it would have to include this information. The Government could not really be "harmed" thereby, since this would simply reinforce the "notice" of its lien which it

had filed at the Harris County Court House. The Government has also argued that such a restriction in the notice was not authorized by either the Internal Revenue Service or the court order establishing the sale. IRS authorization was unnecessary since the Government had filed its own notice of lien locally and since equity required Allen and Cowan to include these facts which could affect any title acquired by the successful bidder. Finally, the Government has misconstrued the words "without reserve" in Judge Hannay's order. They do not mean "without restriction." "Without reserve" is a term of art when used in reference to an auction and means that the property will go to the bidder who offers the highest price and will not be withdrawn from sale before the acceptance of a bid. Blossom v. Milwaukee & Chi. R. Co., 3 Wall. 196, 18 L. Ed. 43 (U.S.1865); Annot. 37 A.L.R.2d 1049 §§ 2 and 5; Zuhak v. Rose, 264 Wis. 286, 58 N.W.2d 693, 37 A.L.R.2d 1041 (1953); 7 Am.Jur.2d Auctions and Auctioneers § 21; and see, U.C.C. § 2–328(3) and Texas Business and Commerce Code § 2.328(c) (effective September 1, 1967), V.T.C.A.

■ The Government has not carried its burden of proving the inadequacy of the price paid by the successful bidder. If the painting is a Van Dyke then it would have considerable value. The Government did not attempt to prove its value by proving that it is an authentic Van Dyke. The Government did offer Judge Hannay's order as proof that the parties and their attorneys considered the painting to have some value, at least in excess of $3,000.00, but this does not show the painting's value. The only other proof of value offered by the Government was a letter consigning the painting to Podgoursky and stating a value of $35,000.00 (Govt.Ex. 5), but it was not admitted on the issue of value.

■ The Government's second argument, that its post-auction lien against Irene Von Cseh is superior to the rights of the high bidder, Mrs. Allen, in that she is not a "purchaser" within the meaning of 26 U.S.C. § 6323(a) and (h)(6), is also rejected. Since Mrs. Allen purchased the property at a regular judicial sale pursuant to a judgment in a civil action in which the claimed lien could have been asserted under 28 U.S.C. § 2410 or 26 U.S.C.A. § 7424, and since no notice of the lien had been filed locally at commencement of the action, then the provisions of 26 U.S.C. § 7425(a)(2) [1] apply, and the interests of the United States must be subordinated under Texas law to those of the purchaser at the judicial sale.

The claims of the United States are rejected and judgment will be entered for the defendant Claude T. Allen that the United States take nothing by its suit.

---

1. § 7425. *Discharge of liens*
   (a) *Judicial proceedings.*—If the United States is not joined as a party, a judgment in any civil action or suit described in subsection (a) of section 2410 of title 28 of the United States Code, or a judicial sale pursuant to such a judgment, with respect to property on which the United States has or claims a lien under the provisions of this title—
     (2) shall have the same effect with respect to the discharge or divestment of such lien of the United States as may be provided with respect to such matters by the local law of the place where such property is situated, if no notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced or if the law makes no provision for such filing.
These provisions became effective November 2, 1966, and applied to all titles or liens of the United States regardless of when they arose.