ROBERT K. BENSON ET AL., APPELLEES, V.
LESLIE RUGGLES ET AL., APPELLANTS.
CLARENCE D. BURTCH, APPELLANT, V.
ROBERT K. BENSON ET AL., APPELLEES.
LESLIE RUGGLES, APPELLANT, V.
ROBERT K. BENSON ET AL., APPELLEES.

303 N.W.2d 496

Filed March 20, 1981. Nos. 43053, 43054, 43055.

Mousel & Burger, P.C., for appellants.

Carlton E. Clark for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

MORAN, District Judge.

This is an appeal from a decree quieting title to real estate, and denying specific performance of contracts for its sale alleged to have resulted from an auction without reserve. We affirm.

James Hinn (Hinn) and his wife, Judy, were the buyers of a ranch in Blaine, Logan, and Thomas counties, under an installment sale contract with Theodore and Robert Hanich, as sellers. The Hinns listed the ranch for sale with Stockmen's Realty, Inc., of North Platte (Stockmen's), a firm licensed to sell real estate in this state. Brokers or sales representatives for Stockmen's were Gary Coble and Al Cheatle. Robert K. Benson (Benson) learned that the ranch was for sale and contacted Cheatle. Benson and his wife, Dolores, (Bensons) owned two adjoining tracts of farm and pastureland in Frontier County. Negotiations progressed to the point that an exchange agreement was executed by the Hinns and the Bensons. The agreement, as received in evidence, was dated May 21, 1975. It provided for placing the exchange deeds in escrow for delivery upon the negotiation of a new installment sale contract by the Bensons with the Haniches. This was done. The deeds were never delivered. Possession of the real estate was to be given on or before June 2, 1975. The Bensons vacated the Frontier County land about June 1, 1975, and moved to the ranch. Hinn never moved onto the Frontier County land or leased it. The exchange agreement provided for the payment of money by the Bensons to the Hinns in the form of a promissory note, payable in installments over a period of 10 years. The amount

of money to be paid was left blank. Both the Hinns and the Bensons were represented by counsel. The exchange agreement was never recorded at the Register of Deed's office in Frontier County. Arrangements were made for the sale of the Bensons' Frontier County land at auction. Benson sold farm equipment he would not need on the ranch at the auction. The sale was advertised for a date prior to June 17, 1975, but the date was changed at Benson's request because of insufficient advertising time and failure to reserve the growing wheat crop to him. This was not reserved in the exchange agreement.

Stockmen's advertised the auction sale for June 17, 1975, in newspapers in the area. Advertisements for the first sale date are not in evidence. The advertisements of the June 17, 1975, auction stated that Jim Hinn was the owner of the land, and that it would be sold to the highest bidder on the date of the sale without minimum or reservation. Farm machinery was also advertised. It was to be sold to the highest bidder on the date of the sale. Near the bottom of the two advertisements received in evidence the words "Formerly: Bob Benson Property" appeared in large type. One advertisement stated "Immediate possession." Stockmen's was identified as the agent for the seller.

At the auction on June 17, 1975, Benson was present; Hinn was not. Gary Coble was the auctioneer of the land. Al Cheatle assisted. Benson testified that the morning of the auction, his attorney called him and told him that Stockmen's had changed the sale advertising from what he had approved; that they had not reserved the wheat; and that the land would be sold to the highest bidder, and "he didn't think it should be. It has to be accepted by James Hinn." Benson testified he spoke to Cheatle before the sale about what his attorney had told him. There is a conflict in the evidence whether at the opening of the land auction, or at any time thereafter, there was an announcement to the bidders that the sale was subject to the approval

of Jim Hinn or any other person. The trial court made no finding in this respect. The auction was held separately on the two tracts. There was testimony, denied by Benson, that he told the bidders that the fences were good, and that all that was needed was to turn the cattle in and turn on the windmills. Leslie Ruggles was the high bidder on one tract, and Clarence D. Burtch on the other. After offering both tracts together and receiving no bids, Coble announced that Tract 1 was sold to Ruggles and Tract 2 was sold to Burtch. Here, too, there is a conflict in the evidence. Coble testified he said "sold subject to the approval of James Hinn," and other witnesses testified he simply stated "Sold." Ruggles and Burtch testified the price they bid was a fair price, and that there was no change in market value from the date of the auction to the date of Hinn's refusal. Immediately after, Al Cheatle secured checks from Ruggles and Burtch for 15 percent of the bids. These checks have never been presented for payment or returned. Each also signed a document entitled "Purchase Offer, Acceptance and Receipt" offering to purchase the real estate from the Hinns for the amount of the bid. It provided for acceptance by the seller on or before June 18, 1975, and if not accepted by then, it was to terminate. These documents were not signed by Stockmen's or its agents.

Following the auction, later in the afternoon, Benson and another employee of Stockmen's contacted Hinn at the North Platte airport and told him what the land had brought. Cheatle, Ruggles, and Burtch drove to North Platte after the auction. Cheatle said they went to get Hinn's signature on the purchase offers. Hinn did not appear at Stockmen's office, and Burtch and Ruggles left late that evening. Within a few days Cheatle told Ruggles and Burtch that Hinn would not sign the agreements. At one time, there was a suggestion that their bids could be raised, but they refused.

On June 21, 1975, an attorney acting on behalf of Ruggles and Burtch filed a document for recording in the Frontier County Register of Deed's office. It was captioned "Caveat Emptor" and addressed to all persons interested in the Frontier County real estate. It stated in substance that Ruggles and Burtch had purchased the real estate at public auction which was sold by the Hinns pursuant to newspaper advertising; that they were ready to comply with the terms of sale, but the sellers have stated they would not sell the real estate. The document also recited that all persons interested were on notice of the claim, and that the purchasers intended to resort to litigation to enforce their rights.

Neither Ruggles nor Burtch ever spoke to Benson about the sale, before, during, or after it. Benson, Hinn, and representatives of Stockmen's continued fruitless negotiations for about a year with a view to completing the exchange agreement. Ruggles and Burtch also negotiated with Hinn and Stockmen's during that time.

On July 30, 1975, the Hinns brought an action in Logan County to eject the Bensons from the ranch. On February 5, 1976, a judgment evicting the Bensons was entered. That judgment has not been appealed. The Bensons returned to the Frontier County land in May 1976. Except for Ruggles' pasturing of cattle on Tract 1 for a month or two after the auction, the land had been vacant. Benson did harvest and retain the wheat in the summer of 1975. In 1976, Benson applied for a loan and the caveat emptor was discovered on the real estate records. He requested Ruggles and Burtch to release it. They refused, and he brought the action now before this court to quiet title to the real estate on May 18, 1978. Ruggles and Burtch answered and counterclaimed for specific performance and for damages. On April 6, 1979, Ruggles and Burtch brought separate lawsuits against the Bensons, the Hinns, Coble, and Stockmen's. De-

murrers on the grounds of misjoinder filed by Hinn, Coble, and Stockmen's were sustained, and leave was given to separately file and docket separate petitions against them. This case is apparently still pending.

The cases of Ruggles and Burtch against Benson were for specific performance and for damages. The petitions are identical as to the facts alleged except for the real estate involved. So far as is material here, they allege the exchange agreement; that pursuant to it the Bensons caused Hinn, Stockmen's, and Coble to place the real estate up for public auction, to the highest bidder, without reservation on June 17, 1975; that the auction was advertised accordingly; that at all times Coble and Stockmen's were the agents of the Hinns and the Bensons; the auction was conducted by Coble and Stockmen's and with the knowledge, consent, and direction of the Hinns and the Bensons; that the property was sold to Ruggles and Burtch at the auction; and that they are entitled to specific performance. The Bensons' quiet title action was tried to the court on the issue of title to real estate only. The cases of Ruggles and Burtch against the Bensons were tried to the court on the record in the quiet title action on the issue of title to real estate only.

All damage issues were reserved for future trial pending the final determination of title to the real estate.

The trial court quieted title to the Frontier County real estate in the Bensons against Ruggles and Burtch, and entered judgment against them on their specific performance claim against the Bensons. Ruggles and Burtch have appealed.

Ruggles and Burtch contend that (1) they are entitled to specific performance of the agreement to sell the real estate, the terms of which are the advertisement that the auction would be without reserve; (2) they were the high bidders at the auction; (3) the auctioneer announced that the property was sold to them; and (4) they made the downpayment required

in the advertisement. They also argue that Benson is equitably estopped from claiming title to the real estate as against them.

We assume for the purpose of this opinion only that Stockmen's, Coble, and Cheatle were agents of Benson authorized to auction the real estate without reserve.

There is no written contract, note, or memorandum signed by or on behalf of the seller sufficient to satisfy the statute of frauds, Neb. Rev. Stat. § 36-105 (Reissue 1978). In substance, we are asked to amend it to make it inapplicable to real estate. The only authority cited in support of appellants' position is *Zuhak v. Rose*, 264 Wis. 286, 58 N.W.2d 693 (1953). In that case, specific performance was decreed for the high bidder at a public auction of real estate advertised as being without reserve. The court stated that under the circumstances the owner could not complain that the buyer had no memorandum of sale sufficient under the statute of frauds. It cited no authority in support of that holding, but did construct an analogy between sales of real estate and personalty at auction without reserve. Sales of goods at public auction with and without reserve are governed by Neb. U.C.C. § 2-328(3) (Reissue 1971). If the Legislature wishes to make similar provision for auctions of real estate, it may do so.

We decline to follow *Zuhak*. It has been criticized in *Del Rio Land, Inc. v. Haumont*, 118 Ariz. 1, 574 P.2d 469 (1977). Furthermore, conflicting testimony in this case over what was said by the auctioneer is a good illustration of the necessity for the statute of frauds. We judicially notice that auctions are generally not quiet affairs. They carry with them the potential for misunderstandings. Statements made are not recorded.

In a proper case one may be equitably estopped from asserting title to real estate. See *Gillespie v. Sawyer*, 15 Neb. 536, 19 N.W. 449 (1884). However, the doctrine does not apply in this case because Ruggles and Burtch did not suffer injury, detriment, or prejudice to a sufficient degree. *Shelby v. Platte Valley*

*Public Power and Irrigation District*, 134 Neb. 354, 278 N.W. 568 (1938). Their checks were not presented for payment. They did not improve the real estate. Except for Ruggles pasturing cattle for a short time (a benefit to him), neither took possession of the real estate. Neither really changed his position in reliance upon the acts of Benson, Coble, or Cheatle.

AFFIRMED.