THORP SALES CORPORATION, a Wisconsin corporation,
Plaintiff-Appellant,

v.

GYURO GRADING COMPANY, INC., a Wisconsin corporation,
and James Gyuro, Defendants-Respondents-Petitioners.

GYURO GRADING COMPANY, INC., a domestic corporation,
Plaintiff-Respondent-Petitioner,

v. .

THORP FINANCE CORPORATION, a domestic corporation,
Defendant-Appellant.

Supreme Court

*No. 81–598. Argued February 3, 1983.—Decided March 29, 1983.*

(Also reported in 331 N.W.2d 342.)

For the petitioners there were briefs and oral argument by *Stephen R. Miller,* Milwaukee.

For the plaintiff-appellant there was a brief by *J. Michael End* and *Gray & End,* Milwaukee, and oral argument by *J. Michael End.*

HEFFERNAN, J.   This is a review of a decision of the court of appeals[1] which reversed a judgment of the circuit court for Milwaukee county, WILLIAM A. JENNARO, Circuit Judge, and remanded the cause for the determination of damages.   We affirm the decision of the court of appeals.

The question on this review is what measure of damages is appropriate to compensate an auctioneer when the owner of goods, after entering into an irrevocable agreement to produce specified goods at a scheduled

[1] 107 Wis. 2d 141, 319 N.W.2d 879 (1982).

auction, by refusing to produce the goods for sale breaches the auction contract, which stipulated the commission percentage due the auctioneer for goods sold at auction but contained no provision for a minimum, or upset, price for each item to be sold.

We conclude that the auctioneer is entitled to recover as damages the lost profits occasioned by the property owner's breach which are proved to a reasonable certainty and that these profits are appropriately determined by the contracted-for commissions, less any of the auctioneer's expenses saved as a consequence of the breach.

Gyuro Grading Company was indebted to Thorp Finance Corporation, and its indebtedness was secured by encumbrances on 165 pieces of construction equipment. Gyuro, to produce funds to pay off the finance company, entered into a contract with Thorp Sales Corporation, wherein it was agreed that Thorp Sales Corporation would advertise, conduct, and clerk an auction sale of all of the 165 items covered by Thorp Finance's security agreement. It was agreed that Thorp Sales' commission was to be 8 percent of the auction sales price.

Initially, it was agreed that the auction sale was to be held at Gyuro's yard on April 17, 1976. The agreement was modified to provide that the sale was to be held on April 10, 1976, at an auction already scheduled at State Fair Park, and it was agreed that the number of pieces of equipment owned by Gyuro to be sold at auction was to be reduced to 15, because the 15 selected items were expected to yield sale proceeds sufficient to satisfy the indebtedness of Gyuro to Thorp Finance Corporation.

The auction scheduled for April 10, 1976, was held, but sometime prior to that date Gyuro notified Thorp Sales that it would not deliver the pieces of equipment to Thorp for sale.[2]

---

[2] On March 22, 1976, Gyuro sold one of the 15 items and sent the $20,000 sales price to Thorp Finance in partial release of the

Thorp Sales then sought a mandatory injunction against Gyuro to compel the production of the equipment at the auction, but this petition was denied. Thorp Sales then commenced action against Gyuro for the breach of the auction agreement. Summary judgment was granted to Thorp Sales determining that Gyuro had breached the auction contract. The court also determined that Gyuro was entitled to a credit of $1,600 against any judgment for damages that Thorp Sales might subsequently recover against Gyuro. This determination by the circuit court was an interlocutory judgment in respect to liability only. The circuit court had not, at this time, tried the question of damages.

The circuit court interlocutory judgment holding that Gyuro had breached the auction contract was affirmed on appeal, and Gyuro's petition for review to this court was denied. Accordingly, the determination that Gyuro breached the auction contract is *res judicata*. The cause was remanded for trial on the issue of damages.

Upon remand, the damage question was tried before the circuit court. The circuit court found that Thorp had not satisfied its burden of proof on the damages issue because the proof was speculative and the evidence self-serving. It further concluded that Thorp, as a matter of law, would not be entitled to lost profits even if they could be demonstrated to a reasonable certainty. Judgment was entered dismissing Thorp's complaint. It is this judgment, which was reversed by the court of appeals, which is the subject of this review.

security interest upon the equipment. Thorp Finance paid over $1,600 to Thorp Sales, *i.e.*, 8 percent of the sales price, to compensate the sales company for its lost commission, and credited $18,400 to Gyuro's indebtedness. It was shortly after this transaction that Gyuro notified Thorp that it would not bring any of the equipment to the State Fair Park for auction.

The trial court reasoned that the law was clear that no liability could be incurred by an owner in an auction sale situation because:

"Property may be withdrawn from auction before any bids are made without liability to the owner except for expenses and costs incurred by the auctioneer in setting up the auction."

Alternatively, the trial court, relying on Wisconsin cases, stated the rule to be that:

"[A] seller is precluded from withdrawing his property from an auction without reserve sale *after* a bid has been received. *Keske v. Boeder,* 168 Wis. 369 (1918), but until then the seller is in *locus penitentiae* to the property and may withdraw the same from sale or the auction, even though the conditions of sale, as they did here, provide that the property shall not be withdrawn. *Zuhak v. Rose,* 264 Wis. 286 (1953) . . . ."

It is at once apparent that the trial judge's citations of authority miss the point, for, were they applicable, Gyuro would not have breached the contract. The quotations relied upon would lead to the conclusion that Gyuro had every right to refuse to produce the equipment at the auction. Yet it is *res judicata* that Gyuro was guilty of breach. The circuit court, to which the cause was remanded to try the damage phase of this case, cannot hold that Gyuro did not breach its contract when the circuit court and the court of appeals in the liability portion of the case made a determination to the contrary and this court declined to review. The law of the case is clear that there is liability to the auctioneer[3] for breach, in the circumstances of this case, where an owner has validly contracted to produce goods for sale at an auction

---

[3] We use the term "auctioneer" in this context as being synonymous with the auction company or Thorp Sales.

and then, without a legally justifiable reason, declines to perform.

The cases upon which the circuit court relied to hold there could not be liability are not only not pertinent in light of the established law of this case, but in addition they are distinguishable in that the facts of those previous Wisconsin cases are markedly different and present an entirely different problem. *Keske* involves an action by a putative buyer against the owner, who alleged that the particular animal claimed by the plaintiff was sold by mistake. While the case, in dicta at least, appears to hold that the owner can, *vis-a-vis* the rights of an alleged buyer at auction, withdraw property from sale at any time prior to the fall of the auctioneer's hammer, the case does not address the situation in this case, where the withholding of the property affected the auctioneer and not a buyer. *Keske* is irrelevant to the present case.

*Zuhak v. Rose* is also irrelevant. There the owner withdrew property from the auction after bids had been taken. The highest bidder brought suit, alleging that, as the one who made the best offer, he was entitled to the property whether or not the owner, who had advertised the sale as being "without reserve,"[4] felt the price was adequate. This court affirmed judgment for the plaintiff buyer. The rights of the auctioneer as against the owner were not discussed. The circuit court's reliance on *Zuhak* is misplaced.

---

[4] "The words 'without reserve' as used in auctions are words of art, assuring prospective bidders that the property will actually go to the bidder offering the highest price. The seller may not nullify this purpose by bidding himself or through an agent, nor by withdrawing the property from sale if he is not pleased with the bids. Thus, the seller may not refuse to accept a bid where the auction is without reserve; the bid itself establishes a right in the bidder to have the property unless someone else by raising his bid succeeds to his right." *Zuhak v. Rose*, 264 Wis. 286, 291, 58 N.W.2d 693 (1953).

The court of appeals appropriately distinguished the case of *C.E. Girardey & Co. v. Stone,* 24 La. Ann. 286 (1872). In the case before us there was an express agreement that Gyuro would not withdraw his property from the sale and there has been an express holding that the contract was breached. In *Girardey* neither of those facts obtained. The *Girardey* court expressly found there was no contractual obligation on the part of the owner not to terminate. *Girardey* is irrelevant as well as ancient. Moreover, it is not good contract law. Even if it were given the interpretation urged by Gyuro—and we conclude that interpretation is inaccurate—we would decline to follow it. Under the theory of *Girardey* there could be no breach. All that was allowed was a recoupment of an agent's expenses in promoting the interests of his principal. *Girardey* cannot be applied to this case, where it has been determined that Gyuro, the owner of the goods, has breached the auction contract.

Thus, the trial court ignored the procedural history of this case—that breach of contract had been found and affirmed on appeal and the only question for it to decide was damages.

The court of appeals chose to analogize the auction situation here to the claim of a real estate broker for compensation as against an owner. We find that analogy imperfect. The cases determining the rights of brokers as against seller-owners for commission appear to be substantially *sui generis*. We believe that the correct conclusion of the court of appeals can be more appropriately supported on general contract principles.

There appears to be no reason for a rule which would deny auction companies ordinary contract damages in the event of a breach. Contracts between auctioneers and persons who contract to have goods sold at auction ought to have the same sanctity under the law as any other contract. Once there has been a breach of a contractual obligation, as concededly there has been in this

case, the wronged party has a right to an appropriate remedy, which is dependent upon the nature and extent of the wrong sustained.

The Restatement 2d, 3 Contracts 2d, sec. 344, categorizes the interests of a promisee which are to be protected by a remedy. Three categories are stated: The expectation interest, the reliance interest, and the restitution interest. Expectation interest as defined in sec. 344(a):

". . . is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed."

It is Thorp's expectation interest which has been injured by Gyuro's breach. What Thorp Sales has lost is its right to be compensated by the payment of commissions upon the sale of goods at auction. Wisconsin cases long have conformed to this standard of contract remedy.

In *Schubert v. Midwest Broadcasting Co.*, 1 Wis. 2d 497, 502, 85 N.W.2d 449 (1957), we said:

"The fundamental idea in allowing damages for breach of contract is to put the plaintiff in as good a position financially as he would have been in but for the breach."

*See,* also, *United Leasing & Financial Services, Inc., v. R.F. Optical, Inc.*, 103 Wis. 2d 488, 492, 309 N.W.2d 23 (Ct. App. 1981).

Thus, the award of damages for a breach of contract should compensate an injured party for losses that necessarily flow from the breach. *Repinski v. Clintonville Federal Savings & Loan Asso.*, 49 Wis. 2d 53, 181 N.W. 2d 351 (1970); *Lommen v. Danaher*, 165 Wis. 15, 161 N.W. 14 (1917).

An injured party is entitled to the benefit of his agreement, which is the net gain he would have realized from

the contract but for the failure of the other party to per-form. The agreement of Gyuro was that Thorp Sales was to be compensated for its auction services by receiving 8 percent of the auction proceeds. Because of Gyuro's conduct, Thorp Sales was prevented from performing and Thorp was denied the benefit of its bargain.

The general rule applicable in such a situation appears in the Restatement 2d, 2 *Agency* 2d, sec. 445 :

". . . an agent whose compensation is conditional upon the performance by him of specified services, or his accomplishment of a specified result, is not entitled to the agreed compensation unless he renders the specified services or achieves the result."

Accordingly, the damages to compensate Thorp in the instant case are not *per se* the 8 percent commission; but, nevertheless, the agreed upon commission is an important factor in determining what would have been necessary to give the injured party the benefit of the bargain by putting it in as good a position as it would have been in had the contract been performed.

Comment *a* to sec. 445 relates to a situation in which compensation is conditioned on the accomplishment of a specified result. The essence of comment *a* is that, if the principal, by breaching the contract, prevents the agent from accomplishing the specified result, the agent is entitled to damages. Those damages may coincide with the agreed compensation. If, however, the agent would have incurred expenses and the breach saves those expenses, then the agent is entitled only to the agreed compensation less the expenses he has saved.

These general principles set forth in the Restatement are consistent with the Wisconsin law. In *Buxbaum v. G.H.P. Cigar Co.*, 188 Wis. 389, 206 N.W. 59 (1925), we held that, if an injured party foreseeably would have realized profits from performing the contract, then lost

profits should be considered in determining damages. In *Allen v. Murray*, 87 Wis. 41, 57 N.W. 979 (1894), we held that, when a party is prevented from fully performing a contract, it is entitled to recover the profits it would have realized by performing, that is, the difference between the contract price and what it would have cost the party to perform.

It is apparent that, if Thorp Sales had been permitted to sell Gyuro's equipment, it would, under its contract, have been entitled to 8 percent of the total proceeds of the sale. Under the accepted standards for contract damages, it will receive compensation only for its expectation interest—the benefit of its bargain if it is allowed to recover the contracted-for 8 percent commission—less the expenses saved by not having to perform.[5]

Thorp Sales is not entitled to its commission *per se*, but rather it is entitled to damages measured by the gain or profit it would have realized had it been allowed to perform in accordance with its bargain with Gyuro. The net gain or profit that would have been realized had it been allowed to perform is not easily proved. Thorp Sales is required to establish to a reasonable probability that the property would have been sold had the auction taken place and what the sales price probably would have been. The mere fact that there may be difficulty in coming forward with the necessary proof in no way should militate in favor of a flat rule denying any recovery. The difficulty in coming forward with proof should not be charged to Thorp, the injured party, for, had there been no breach and had the sale taken place, the amount of compensation could have been calculated according to the contract provisions without difficulty. The difficulty

---

[5] Accordingly, the 1½ percent commission which Thorp would have been required to pay the individual auctioneer is an expense saved by nonperformance.

in proving what the compensation should be is the result of Gyuro's wrong. This situation is appropriately addressed in Wis. JI—Civil 3725, in which it is stated:

"In the very nature of things, such profits cannot be definitely ascertained or determined. If the wrong itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference or estimation, although the result may only be approximate."

Accordingly, Gyuro should not be heard to assert that Thorp Sales ought to recover nothing because the exact monetary loss caused by Gyuro's breach cannot be ascertained. This is like the plea of the proverbial miscreant who murdered his parents and then threw himself upon the mercy of the court because he was an orphan. Thorp Sales clearly has been injured, and any reasonable approximation of the amount of that injury must in justice be accepted as a measure of the damages. The trial court rejected all damages because it concluded that the evidence in respect to damages was, at best, self-serving and speculative. The testimony adduced at trial is summarized in the court of appeals opinion. That court stated:

"The record reflects that both parties produced evidence concerning the value of the fifteen pieces of equipment covered by the auction agreement. Gerald F. Nitke (Nitke), the auctioneer, testified on behalf of Thorp. Nitke testified that he had eighteen years experience in the auction appraisal business, that he had done appraisals for banks, the government and construction businesses and that he had begun the State Fair Park auctions and personally ran them. Nitke's affidavit dated October 28, 1977, indicated that the fifteen pieces had a total auction value of $131,000. Nitke described this value as a conservative figure which represented wholesale value. Nitke estimated the auction value to be thirty to forty percent higher than loan value. Nitke estimated

the loan value, which he defined as the distressed sale value, at $89,600.

"James Gyuro testified on behalf of Gyuro. James Gyuro testified that he had thirty years experience in buying and selling at auctions. His evaluation affidavit dated October 7, 1977, estimated the value of the fifteen items, as of April 17, 1976, at $89,600. The affidavit indicated that these prices were corroborated by the 'Thorp Auction Price Guid [sic]' for its 1976 sales. James Gyuro also testified about the prices which Gyuro paid for some of the equipment when purchased and the prices which many of those items sold for after the date of the auction." Pp. 153–54.

Based on this summary of evidence gleaned from the record, the court of appeals concluded that both parties produced evidence of the value of the equipment, and it concluded that the range of values established in the record afforded a basis on which Thorp Sales' damages could be ascertained to a reasonable certainty. Our own examination of the record satisfies us that Thorp's witness, Nitke, was an experienced auctioneer and that he stated that he had sold numerous other items of property at the very auction to which Gyuro's property should have been delivered. He was able to testify that the particular crowd which appeared at the auction was one which probably would have reacted to Gyuro's property as it did to other property actually auctioned—that there would have been bids consistent with the estimated auction value. Nitke's testimony is highly probative. He is certainly not disqualified as a matter of law, and his testimony is not inherently incredible.

While we cannot substitute ourselves as the factfinders in this case—for that is the function of the trial court—the trial court did not discount any of Nitke's testimony because it was incredible or because it chose to believe contrary testimony. Rather, it took the position that, because the prices could not be determined with

exactitude, they were so speculative that they could not form a basis for an award of damages. This conclusion is erroneous as a matter of law.[6] There was no dispute in respect to the lowest value of the property which should have been delivered at the auction site by Gyuro. It was agreed that this value was $89,600. Gyuro never asserted that the property would have brought less than its loan value. Sale at loan value would have resulted in commissions, at 8 percent, or over $7,100.

It is patently unjust to conclude, because the selling price could not be determined with exactitude, that the injured party should go totally without compensation.

We do not, however, purport to direct the trial court in its computation of the amount of damages. If the

---

[6] McCormick, *Damages*, p. 99, states the general rule that a degree of certainty in fixing a damage award is required. The text goes on, however, to discuss modifying doctrines, which in a case such as the one before us substantially supplants the general rule. McCormick summarizes the modifications to be applied in utilizing the standard of certainty:

"There are various modifications of the rule of certainty. They enable the courts, while holding up a high standard of certainty as an ideal, to avoid harsh applications of it. Among them are:

"(a) If the fact of damage is proved with certainty, the extent or amount may be left to reasonable inference.

"(b) Where the defendant's wrong has caused the difficulty of proof of damage, he cannot complain of the resulting uncertainty.

"(c) Mere difficulty in ascertaining the amount of damage is not fatal.

"(d) Mathematical precision in fixing the exact amount is not required.

"(e) If the best evidence of the damage of which the situation admits is furnished, this is sufficient.

"(f) The plaintiff may recover the value of his contract, and this may be measured by the value of the expected profits.

"(g) Profits may sometimes be proved as evidence of the damages, when they would not be directly recoverable." Sec. 27, pp. 101–02.

facts of record were undisputed, absolutely clear, and did not depend to some extent upon the credibility of the witnesses, we could make the damage calculation ourselves. Such clarity does not exist. There is, however, a range revealed in the record within which the finder of fact may operate. Thorp's witness estimated that the property would have sold at auction for the sum of $131,-000. The lowest value was that estimated by Gyuro—$89,600. Trial court discretion to set damages must be exercised within the range supported by the testimony as revealed in the record. As the case of *Essock v. Mawhinney*, 3 Wis. 2d 258, 88 N.W.2d 659 (1958), demonstrates, mere difficulty in ascertaining damages when a range of appropriate damages is presented is not an acceptable excuse for denying all damages. *Essock v. Mawhinney* raised the question of the measure of damages against an auction company for its negligent delay in commencing a sale. Its significance, however, rests not upon the fact that it involved an auction—for the facts are not similar to those before us—but, rather, the case is significant in respect to the problems a court or jury must face where there is an uncertainty in the computation of acknowledged damages. The court in *Essock* adopted a standard analogous to that used in tort damages, saying:

"The applicable rule is set forth in a decision of this court dealing with the uncertainty of computation of damages resulting from the death of an undetermined number of mink kits. 'The fact that the full extent of the damages in torts must be a matter of uncertainty is not ground for refusing damages. In such cases plaintiff is not denied all right of recovery and the amount is fixed by the court in the exercise of sound discretion.' " P. 269.

Similar reasoning was utilized by this court in *Buxbaum v. G.H.P. Cigar Co.*, 188 Wis. 389, 206 N.W. 59 (1925), where a manufacturer of cigars breached an ex-

clusive agency contract to sell the cigars. Although the agent was not able to predict with exactitude the future loss of profits, we declined to set aside an award on the ground of uncertainty.

In the recent case of *Metropolitan Sewerage Comm. v. R.W. Construction, Inc.*, 78 Wis. 2d 451, 255 N.W.2d 293 (1977), a contract action, this court held that a jury-type verdict was allowable in circumstances where a record could not be developed to show an injured party's financial loss with preciseness and exactitude, but yet the record demonstrated beyond doubt that a loss had been sustained and that liability was clear. We think that this jury-type verdict or determination of damages is especially appropriate in the case before us, when it is the very wrong perpetrated by Gyuro which has made it impossible to determine what the profits or expectation of the injured party would have been had the injured party received the benefit of its bargain. It appears that the circuit judge here operated on the assumption that lost profits from the breach of an auction contract could never be established to the required degree of certainty and, therefore, there could be no recovery. We recognize that some of the language of nonprecedential cases from other jurisdictions and the paucity of authority in Wisconsin law could conceivably lead to that conclusion. We are satisfied, however, that the application of ordinary contract law and the law of damages applicable to the breach of contracts makes it imperative that such damages be compensated in the same manner as any other breach of contract where the breach is clear, damage is proved, and only the question of where in a range damages should be set. As *Mawhinney* pointed out, this is a usual problem, which frequently confronts trial judges in the exercise of judicial discretion. It is, for example, a problem that always arises in respect to personal injury damages. We believe, on the basis of the informa-

tion in the record, the trial court can, on remand, arrive at a damage figure which will fairly compensate Thorp Sales for the injury caused by Gyuro's breach.

It would appear that there are sufficient facts in the record from which the circuit court can make a reasonable determination in respect to the price at which Gyuro's equipment would have been sold had it been delivered to the auctioneer. This figure is to be ascertained on the basis of the evidence of record in the exercise of reasoned judicial discretion. To the sales price so determined should be applied the commission rate of 8 percent, less the expenses which Thorp Sales has been spared by reason of the breach. As has been decided in the earlier proceedings, the damages are to be further reduced by the set-off of $1,600.

We affirm the court of appeals decision reversing the circuit court judgment, and we affirm its remand for the determination of damages in accordance with the facts of record. We add that it is within the discretion of the circuit court to require further evidence if it feels that such evidence will assist it in the determination of the damages to be awarded to Thorp Sales Corporation.

*By the Court.*—Decision affirmed.

ABRAHAMSON, J., took no part.