In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2959

JOSEPH C. MCCORMICK and MARY C. MCCORMICK,

*Plaintiffs-Appellants*,

*v.*

INDEPENDENCE LIFE AND ANNUITY COMPANY,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 12-C-763 — **William C. Griesbach**, *Chief Judge*.

ARGUED JUNE 2, 2015 — DECIDED JULY 24, 2015

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Joseph and Mary McCormick bought a single-premium variable life-insurance policy that permits them to borrow against its cash value. Loans are secured by moving an equivalent amount from sub-accounts that the policyholder can invest to a "general account" that draws 4% interest. The policyholder owes 4.7% on any borrowed sums, so the net is 0.7% per annum, plus foregoing the opportunity to exercise discretion about how to invest

the borrowed sum. The policy adds that, if the owner does not pay the annual 4.7% interest, "it will be added to the principal of the loan and will bear interest."

The McCormicks borrowed against the policy's cash value and did not pay interest. Independence, the insurer, added the amount of unpaid interest "to the principal of the loan" (which caused additional sums to be moved from investments into the general account as security) and charged interest on the higher indebtedness. Over the years, compound interest has increased the debt by $44,000, which if not repaid will reduce the policy's death benefit. The McCormicks seek a declaration that they do not owe this $44,000. As they see things, when the unpaid annual interest was "added to the principal of the loan" each year and moved to the general account, it was thus "paid" automatically—and what has been paid cannot draw interest. The insurer removed the suit to federal court, and the district judge granted judgment on the pleadings, since the dispute turns entirely on the policy's language. The judge thought that the language unambiguously supports the insurer. 2014 U.S. Dist. LEXIS 34981 (E.D. Wis. Mar. 18, 2014).

Our mention of a $44,000 dispute is a tipoff to the only question we need address: What is this case doing in federal court? Removal rested on diversity of citizenship, and $75,000 is the minimum amount in controversy for that jurisdiction. 28 U.S.C. §1332(a). Both sides nonetheless support the removal and maintain that it was proper because the McCormicks' complaint asked for cancellation of the entire loan balance (roughly $70,000) in addition to elimination of the interest. The problem is that there is no legal basis for

that request, which the McCormicks voluntarily dropped soon after removal.

If a suit is filed initially in federal court, a plaintiff's good-faith estimate of the stakes controls unless it is legally impossible for a court to award what the plaintiff demands. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (asking whether it "appear[s] to a legal certainty" that the plaintiff cannot recover the jurisdictional minimum). The same approach applies to a removing defendant's estimate of the stakes. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553–54 (2014). Cancellation of the principal balance as a remedy for excessive interest is legally impossible in Wisconsin, whose law supplies the rule of decision. When pressed at oral argument for any authority underlying the complaint's demand for this remedy, the McCormicks' lawyer conceded that there is none. Wisconsin entitles a party aggrieved by breach of contract to a remedy that will restore him to the position he would have occupied had all promises been fulfilled. See, e.g., *Thorp Sales Corp. v. Gyuro Grading Co.*, 111 Wis. 2d 431 (1983). Cancellation of the principal debt would be a windfall, not a means of vindicating the McCormicks' contractual rights.

Counsel told us that he put the demand in the complaint only because Joseph McCormick really wants cancellation of the debt and thinks himself entitled to it—though without a legal basis. The complaint might as well have demanded treble the amount of disputed interest, even though Wisconsin law offers not a shred of support for a treble-damages remedy. The amount-in-controversy requirement would not be worth the paper it's written on if arbitrary multipliers, or

a plaintiff's fondest wishes, counted toward federal jurisdiction.

In a memorandum filed after the oral argument, the insurer contends that jurisdiction is supported by the complaint's request for an injunction against cancellation of the policy. The policy allows cancellation if a loan's unpaid balance equals or exceeds the policy's cash value. The McCormicks' loan (including interest) was nearing that point, and Independence sent them a notice of proposed cancellation. But how does this propel the stakes over $75,000? If the policy really was at (or approaching) a negative value, then the difference between its continuation and its cancellation has a correspondingly small value.

Suppose, despite this, that the policy's value exceeds $75,000. The policy serves as security for the loan. Forget insurance for a moment and consider the situation in which the owner of a parcel of land worth $1 million uses it as security for a $50,000 loan. The borrower does not repay, and the lender seeks to foreclose and sell the parcel to satisfy the debt. What is the amount in controversy: $50,000 or $1 million? The amount is $50,000, because that is what would satisfy the lender's entire demand on the date the suit was filed. See *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998). Similarly, the McCormicks could have satisfied Independence's demand by paying the $44,000 it claims as interest—and they could have avoided a risk of the policy's cancellation by paying even less (just enough to keep its cash value positive). The request for an injunction against cancellation therefore does not turn this dispute about $44,000 into a controversy worth more than $75,000.

Finally, the insurer maintains that the district court had jurisdiction when it entered judgment, even if not when the case was removed, because after the removal the McCormicks added a federal securities-law claim to their complaint, furnishing federal-question jurisdiction under 28 U.S.C. §1331. There are two potential problems with that line of argument. First, jurisdiction usually depends how things stand when a case is removed, not on what happens later. *St. Paul Mercury*, 303 U.S. at 291–94; *In re Shell Oil Co.*, 966 F.2d 1130, amended, 970 F.2d 355 (7th Cir. 1992). These decisions hold that post-removal changes to the pleadings do not cancel federal jurisdiction that existed on the date of removal, which leaves open the possibility that new bases of federal jurisdiction could be added. See *Caterpillar, Inc. v. Lewis*, 519 U.S. 61 (1996). Otherwise a court might dismiss a suit for lack of jurisdiction, only to have it re-filed the next day with jurisdiction secure. Cf. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989). So we turn to the second problem: the securities claim is as impossible as the demand for zeroing out the loan's principal balance.

Plaintiffs invoked §12 of the Securities Act of 1933, 15 U.S.C. §77*l*, which governs the sale of securities. (Variable insurance policies are securities. See *SEC v. Variable Annuity Life Insurance Co. of America*, 359 U.S. 65 (1959).) They asserted that the insurer violated §12 by stating in the registration statement and prospectus that interest on loans will be deducted from the policy's cash value if not paid when due. Yet the McCormicks' complaint avers that this is exactly what the policy itself says. The complaint therefore does not allege a false statement. The McCormicks alleged breach of contract, not fraud. On the difference between these two for

the purpose of federal securities law, see *Wharf (Holdings) Ltd. v. United International Holdings, Inc.*, 532 U.S. 588 (2001).

More than that: As the district court observed, 2014 U.S. Dist. LEXIS 34981 at *11–14, the complaint reveals that the claim is time-barred—*by twenty-four years*! A claim under §12 arises when the security is first offered to the public, 15 U.S.C. §77m, and a statute of repose sets three years as the outer limit for suit. The McCormicks bought their policy in 1987 (the policy may have been "offered" even earlier) and did not assert a securities claim until 2014. Statutes of repose cannot be equitably tolled, see *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991), and ongoing injury (which the McCormicks assert) differs from a new claim. New injury from an old wrong does not affect the period of limitations. See, e.g., *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002); *United States v. Kubrick*, 444 U.S. 111 (1979). The securities claim is wacky, so far beyond the pale that it cannot support federal jurisdiction. See *Hagans v. Lavine*, 415 U.S. 528, 537 (1974) (an "essentially fictitious" claim does not support jurisdiction under §1331).

The judgment is vacated, and the case is remanded with instructions to dismiss for lack of subject-matter jurisdiction.